(Post 11/2015)

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 23 2020

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
_____Central_____ DIVISION

Whit\/ine A. Fort

_____

_____
(Name of plaintiff or plaintiffs)

v.

CIVIL ACTION NO. 4:20cv81-LPR
(case number to be supplied by the assignment clerk)

Grant Garrett
Excavating, Inc.

This case assigned to District Judge _Rudofsky_
and to Magistrate Judge _Ray_

_____
(Name of defendant or defendants)

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C.

§2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff, Whit\/ine A. Fort , is a
(name of plaintiff)

citizen of the United States and resides at 940 Daniel Drive ,
(street address)

Birmingham, Jefferson, Alabama, 35228
(city)        (county)        (state)        (ZIP)

501-498-8791
(telephone)

3. Defendant, Grant Garrett Excavating, Inc. , lives at, or its
(name of defendant)

business is located at 12913-I-30 , Benton ,
(street address)        (city)

_____, Arkansas, 72015
(county)        (state)        (ZIP)

4. Plaintiff sought employment from the defendant or was employed by the

defendant at _12913 I-30_ , _Benton_ ,
(street address)          (city)

_____ , _Arkansas_ , _72015_ .
(county)          (state)          (ZIP)

5.    Defendant discriminated against plaintiff in the manner indicated in paragraphs 9

and 10 of the complaint on or about _6_      _1_      _2018_ .
(month)      (day)      (year)

6.    Plaintiff filed charges against the defendant with the Equal Employment

Opportunity Commission charging defendant with the acts of discrimination indicated in

paragraphs 9 and 10 of this complaint on or about _2_      _23_      _2019_ .
(month)      (day)      (year)

7.    The Equal Employment Opportunity Commission issued a Notice of Right to Sue

which was received by plaintiff on _10_      _31_      _2019_ , a copy of which notice
(month)      (day)      (year)

is attached to this complaint.

8.    Because of plaintiff's (1) _✓_ race, (2) _____ color, (3)_____ sex,

(4) _____ religion, (5) _____ national origin, defendant:

    (a) _____ failed to employ plaintiff.

    (b) _✓_ terminated plaintiff's employment.

    (c) _✓_ failed to promote plaintiff.

    (d) _Retaliation_ _____

_____

_____

_____

_____

9.    The circumstances under which the defendant discriminated against plaintiff were

as follows: Title VII, the American with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age discrimination, in employment, Equal Pay Act (EPA), and Retaliation.

10.     The acts set forth in paragraph 9 of this complaint:

   (a) ✓ are still being committed by defendant.

   (b) _____ are no longer being committed by defendant.

   (c) _____ may still be being committed by defendant.

11.     Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission which charges are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

   (a) _____ Defendant be directed to employ plaintiff, and

   (b) _____ Defendant be directed to re-employ plaintiff, and

   (c) _____ Defendant be directed to promote plaintiff, and

   (d) ✓ Defendant be directed to pay the plaintiff all damages + EPA

and that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

_____
SIGNATURE OF PLAINTIFF

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: **Whityne Fort**<br>**5300 BASELINE RD**<br>**Little Rock, AR 72209** | From: **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |
|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **493-2019-00836** | **Vera Sumpter,**<br>**Investigator** | **(501) 324-6213** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**William A. Cash, Jr.,**
**Area Office Director**

**OCT 3 1 2019**

*(Date Mailed)*

cc:  **Breanna Trombley**
**NEWLAND & ASSOCIATES, PLLC**
**2228 COTTONDALE LANE**
**SUITE 220**
**Little Rock, AR 72202**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 493-2019-00836 |

| null | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Whityne Fort | (501) 478-8791 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 5300 BASELINE RD, Little Rock, AR 72209 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| GRANT GARRETT EXCAVTING , INC. | 101 - 200 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 12913 I-30 South, BENTON, AR 72015 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11-02-2018  Latest: 11-02-2018
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired December 18, 2017, as executive human resources assistant with my most recent position being logistics coordinator. In September 2018, I complained to HR about discrimination based on my race. In September 2018 I was written up. In October 2018 I complained to the CFO about being treated unfairly. On November 2, 2018, I was discharged.

Management told me I was written up for mixing up drug test on two drivers. My supervisor told me I was discharged because the company was going in a different direction.

I believe I was discharged because of my race, Black, and in retaliation for opposing practices made unlawful under the law in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Whityne Fort on 03-01-2019 01:12 PM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Whityne Fort
5300 Baseline Road #212
Little Rock, AR 72209
501-478-8791

EECO
RE: Wage/ Race Discrimination via Garrett Excavating Inc.

Please allow this letter to serve as a formal complaint of discrimination against Grant Garrett
Excavating Incorporated. My complaint of discrimination includes the following:

- Title VII of the Civil Rights Act of 1964
- Job assignments & promotions
- Discipline & Discharge
- Employment Policies Practices

I am a 30 year old black female and I began working with Grant Garrett Excavating in
December of 2017. I was hired as an Executive HR Assistant to the HR Director Justin
McKenzie starting rate of pay was supposed to be $17 per hour with a monetary raise after 90
days of probation. After a satisfactory evaluation was completed originally agreed was to
become salary in 6 months.

After I accepted the job offer and gave my two week notice to my current employer. I was eager
to start my new career with Garrett Excavating Inc.  After starting I was told by Mr. Mackenzie
that he could only pay $15 per hour.  I was disappointed in Mr. McKenzie not keeping his word
on the rate of pay. I figured I could work my way up to the $17 per hour within the 90 days.
However, no offer letter was offered just a verbal agreement between me and Mr. Mackenzie.
Mr. McKenzie stated that after the 90 days I would be eligible for the $17per hour after
completing the 90 probation period.

I receive a monetary increase per hour of $16 per hour instead of $17 per hour as promised.
Once again I was let down in hopes that once I reach my 6 month goals I would become salary.  I
will become a salary employee if goals were met at satisfactory per Mr. Mc Kenzie. I would also
receive a $2,000 bonus within the 6 months or before a year of employment with a salary of as a
HR Assistant.
Being an HR Assistant I started to notice a lot of inconsistencies:

- I was the only black female employee at the company.
- However, there are two executive assistants within the company the other two executive
  assistants were Caucasians except for me we all had same job titles but unequal pay we
  all have performed similar work yet all have receive promotions bonuses and monetary

increases except for me after my 6-month evaluation.

- I did not receive or become a salary employee as discussed as a HR professional. However, I did complete my 6 month evaluation above satisfactory as discussed.
- I did not receive the $2,000 bonus as promised within the 6 months.

After my 6-month evaluation was completed I did not receive the salary as promised, nor did I receive the $2,000 bonus. I was forced out of my office due to the Hiring of a new Human Resource Manager Mrs. Sharia Davis. Due to my compliance and DOT Background I was promoted to Logistics Coordinator while still maintaining the HR Executive Assistant position. I was told that I had to train the new HR Manager and work as a Logistics Coordinator. I was juggling two job titles and training my new manager. I would work three days in HR where I perform HR functions and 2 days where perform compliance functions doing this transition over 2 months.

I moved out of my office to an office in the Transportation Department in a trailer by myself to make room for the HR Manager. I worked back and forth between the two offices performing to job titles without an increase.

I noticed black employees including myself were not receiving fair treatment within the company. Blacks were being promised monetary raises but never receive them me included. Blacks were being drug tested if they were off from work more than 3 days while whites weren't. Whites were offered a job descriptions and offer letters while blacks were not including me. Blacks that applied for employment with Garrett Excavating were discriminated against because of their color and backgrounds while whites were not blacks would receive infractions for any mistake made while white counterparts wouldn't be reprimanded at all for any of their shortcomings.

On the new promotion I was told that I would be the Trucking Assistant Manager for the Transportation Department by Jackie Mathis who was the Transportation Manager. However, I did not receive that title along with the salary paid before moved. I was given a job description of a Logistics Coordinator and was told that's was my title. I did not receive a monetary salary increase with the new title or promotion nor as promised. After being forced into a new position and Logistics Coordinator I felt as if I was used and demoted after being let down on all promises made. Jackie Mathis was very bitter and rude towards me from the first day of work. I was told by others don't take it personal he is going through a nasty divorce.

However, I continue to try to work with Mr. Mathis the best I could. Once I was fully moved into the Department of Transportation position August 27th 2018 I was given a job description of what my duties would inquire because of my background. I inquired about my job descriptions as a Logistics Coordinator was not align with my actual duties and responsibilities or the pay. I

requested a meeting with HR Director, HR Manager and CFO of the company regarding my frustration with my working relationship with Mr. Mathis and my bonus and salary incentive. During this meeting was given on all promises and I was told that my old position no longer existed. I noticed doing the compliance part of the Logistics Coordinator position I notice files were not in compliance they were in bad condition. I informed Mr. Mathis that we need meet with all drivers us because so much information was missing from their personnel files.

Mr. Mathis prolonged for 3 weeks of getting all drivers to come in and speak with me or meet with me regarding missing information from their files. Early August I started scanning documents required to JJ Keller our third-party vendor. It takes 5 days for scans to upload. Mr. Mathis was panicking, yelling and screaming. Mr. Mathis suggested that I hadn't to scan files. He suggested that I needed assistance in scanning, I told him I did not need help. I informed Mr. Mathis uploads were completed and all uploads take 5 days.

JJ Keller responded mid-June and late August 2018 with the results that Garrett excavating company was at a 0% compliance with all 27 files we needed a 100% percent to be in compliance by November 2nd 2018. Prior to DOT Compliance per Auditor regarding the upcoming Audit I created new forms and put all files in proper order to meet all audit needs. November 2, 2018 we were at 89% compliance. My job functions with the transportation department included orientation, tracking truck daily count, and building a fleet from scratch, etc. He refused to learn any training from me because of my color he did not want a black female teaching him anything. And we both could have learned from each other because there were some things he had in his background that I didn't know and there were things in my background that he did not know. We would have complemented each other perfectly if we could have gotten past his ego. I feel that I was discriminated against because of my race and my sexual origin.

However, Jackie Mathis refused any and all suggestions that I gave him, he always gave me attitude, he was rude and giving me busy work he would avoid me purposely. A white female was hired on November 5, 2018 in my position. I put in for a week leave due to my mother having knee surgery I complete it all work duties and functions prior to asking for the week off. There is no FLMA Policy at Grant Garrett Excavating, Inc. so, I couldn't request .I ask for the week off without pay months ahead of time. When we found out her scheduled for actual surgery.

I was out in the field working and I have returned to the office and upon my return Mr. Jackie Mathis told me that I had been fired and I was told that I was being fired .Once I inquired regarding why I'm being fired I was told that the company was going in a different direction and my services with no longer needed. I ask why and who fired me. Mr. Jackie Mathis stated he doesn't know who fired me. And also stated besides this is a At Will company and we don't have to let you know why we're letting you go. Then Mr. Mathis stated that the HR Manager to let me go, then he turned around and said someone up in the office told me to let you go. I also asked for a copy of a write-up. At the time Mr. Mathis did not have a write- up he stated he didn't have

to give me any documentation. So, I requested documentation or something in writing. He gave me someone else's write –up with their name whited out on the documents and place my name on the documents. Stated it was nice knowing you and I was escorted off the property.

I called HR Manager she stated that she doesn't know what's going and she was unaware that I was being fired on November 2, 2018.


However I thought this was incredibly bad timing considering my mother was going to be out of work for three months and I was supposed to been assisting and helping her financially and I was unable to do that due to being fired without reasonable cause .I feel like I was fired due to the fact that I ask for a week off which was months ahead of time. I also felt like I was fired in retaliation of reporting Mr. Mathis to HR Management Team which is the HR Manager, Sharia Davis and the HR Director, which was Justin McKenzie regarding Mr. Jackie Mathis attitude towards me and our inability to be able to work together appropriately without him making it seem like a very hostile environment. I feel like I was fired due to retaliation for going to HR regarding his attitude, I also spoke with the CFO of the company as well when I asked if I could return back to my position. I was told that my position had been done away with by CFO Gerald Gregory.

However, no one knew that I had been fired nor did they know the cause however the new employee whom was hard in my position had not gone through the proper channels of getting the position. She was a friend of the supervisor that that fired me. I reached out to HR and inquired about why was I fired the HR manager stated she did not know that I have been fired no one had told her that I had been fired. Once she inquired about why I was fired and who hired the new employee she always came up short handed with no answers. Lady that was hired in my position was a white Caucasian with the title of Assistant Trucking Manager she was also promised the salary .Which I was denied the title and the pay.

 **Gmail**

**Whityne Fort <fortwhityne2588@gmail.com>**

## Fwd: Charge:493-2019-00836

1 message

**Tominyana Mitchell** <tominyana@gmail.com>
To: fortwhityne2588@gmail.com

Thu, May 30, 2019 at 1:36 PM

See attached

---------- Forwarded message ---------
From: **Tominyana Mitchell** <tominyana@gmail.com>
Date: Thu, May 30, 2019, 12:41 PM
Subject: Fwd: Charge:493-2019-00836
To: <fortwhitnye2588@gmail.com>


---------- Forwarded message ---------
From: **Tominyana Mitchell** <tominyana@gmail.com>
Date: Mon, Apr 8, 2019, 8:25 PM
Subject: Charge:493-2019-00836
To: <vera.sumpter@eeoc.gov>


Re: Grant Garrett Excavating
Whitnye Fort Charge: 493.2019.00836


Good evening Ms. Sumpter,


I am writing you in reference to the above case. I am a current employee, who has been employed with Grant
Garrett Excavating since July 6, 2018. I have witnessed the discrimination against Ms. Fort as well as myself
and other Black African Americans. Ms. Fort was not terminated due to not doing her job, but was
terminated due to her supervisor (Jack Mathis) wanting to hire his friend from a previous job, who is a
Caucasian woman (Cora Shepard). Ms. Fort was never written up by her supervisor. When my supervisor
heard that Mr. Mathis was getting rid of Ms. Fort, she referred me for the position, due to me having the
skills, knowledge and the management degree for the position. He refused the referral stating that he wanted
Ms. Shepard in that position. Ms. Shepard was hired before Ms. Fort was terminated. Mr. Mathis was trying
to think of ways and reasons to terminate her, asking different people including myself what he can do. I
simply told him that there was no reason and that you can cause the company to be sued, as well as the
others told him the same thing. He terminated Ms. Fort on Friday, November 2, 2018 and Ms. Shepard
started on Monday, November 5, 2018. Ms. Shepard was offered $50,000/year salary by Mr. Garrett. Ms.
Shepard sat around for a whole month receiving income to do nothing. The reason I know this is because I
was the one doing her work, but I only receive $13.00/hour. I began to complain to the COO (Gerald
Gregory) about me doing her work, but she is the one receiving the pay. He apologized about the situation,
he thought that the work had been released to her and demanded that she start doing her own work. Mr.
Garrett stressed to my supervisor (Cathy Logan), that Ms. Shephard should receive extensive training. I have
been there going on a year, and I am still waiting to be trained. Ms. Shepard has received more than enough
training from my supervisor as well as the HR Manager (Sharia Davis) and still can't perform her job
correctly, due to not having the skills.

Ms. Fort's supervisor quit due to not wanting to write the statement for EEOC, because he didn't have a
reason to terminate her. After he resigned, Mr. Garrett appointed Ms. Shepard as Trucking Director after only

being with the company for 4 months. He did not offer the position to anyone else in the company who has been there longer and who knows how to do the job. Ms. Shepard came from another trucking company, were she worked as the receptionist for 2 years. She was hired in at that company through a temp service. She does not have any skills nor a background in management, DOT, human resources, nor does she have a CDL (the reason I know about her skills and background, is because I put her employee file together). Those are some of the requirements for that position. There is a young Black African American male, who has been the Trucking Manager for over 6 months. If anyone was offered the position first it should have been him, due to him having the background and skills in management, DOT as well as him being a CDL driver.

My reason for sending you this email is to show you some of the discrimination that is taking place at this company. If you have any questions, comments or concerns please feel free to contact me via phone or email. My contact information is as follows 314-489-7571 and tominyana@gmail.com.

Thank you for your time!

Tominyana Mitchell, B.A.



2228 Cottondale Lane
Suite 220
Little Rock, AR 72202
501.221.9393
arvale@associativatic.com

•  Attorneys at Law  •

**April 6, 2019**

Ms. Virginia Pollard, Enforcement Supervisor
Equal Employment Opportunity Commission
Little Rock Area Office
820 Louisiana, Suite 200
Little Rock, AR 72201
virginia.pollard@eeoc.gov

> **RE:   EEOC Charge No.: 493-2019-00836**
> **Charging Party:   Whityne Fort**
> **Respondent:   Grant Garrett Excavating, Inc.**

Dear Ms. Pollard:

Please consider this letter Grant Garrett Excavating, Inc.'s ("GGE") position statement in response to the above referenced Charge. GGE denies that it has ever discriminated against Whityne Fort based on her race or any other reason, and denies that it has retaliated against her in any way, as alleged in her Charge. The following explanation shows the non-discriminatory and non-retaliatory reasons for Ms. Fort's discharge from GGE.

It is the policy of GGE to ensure equal employment opportunities in all personnel actions. All employment related decisions, including termination, are made without regard to an individual's race religion, color, national origin, sex, age, disability, or any other status protected by law. In addition to striving to maintain a work environment free from discrimination or harassment, GGE provides avenues for making complaints and reporting incidents of discrimination or perceived discrimination.   (See Attachment 1 – Anti-Harassment and Discrimination Policy excerpts from GGE Employee Handbook). Furthermore, GGE's policy expressly prohibits retaliation for making any complaints of discrimination or perceived discrimination.

GGE is an excavation contractor that engages in trucking and short haul services, including dump truck and material hauling, as part of its regular business operations. In 2018, GGE began expanding its trucking division as part of the Company's growth plan. GGE is subject to Federal Motor Carrier Safety Administration and Department of Transportation regulations.

Ms. Fort was hired by GGE on December 18, 2017, as an executive human resources assistant. Upon being hired, she received a copy of GGE's Employee Handbook, the receipt of which she acknowledge in writing on December 4, 2017. (See Attachment 2 - Signed Employee Handbook Acknowledgement.)

As the Company continued to grow, Ms. Fort was informed that her assistance was needed more in the trucking division, an area in which she had prior employment experience. She initially split her time between trucking and human resources, and was eventually transferred to the trucking division on a full time basis due to the Company's growth and need for help in that division.

In June 2018, Ms. Fort received a verbal warning after an incident in which she failed to properly process a new CDL applicant. In August 2018, a similar incident occurred, and she received a written warning, which was placed in her personnel file. (See Attachment 3 – Employee Disciplinary Notice.) Shortly thereafter, she began expressing her dissatisfaction with her new position. On August 27, 2018, Ms. Fort met with Human Resources to discuss her recent mistake, during which signed the Employee Disciplinary Notice and discussed a plan for preventing such mistakes in the future. During the meeting, she never reported any concerns of discrimination or mistreatment on the basis of race. As a result, no investigation was conducted on such basis. (See Attachment 4 – Letter from Sharia Davis, HR Manager.)

On October 1, 2018, Ms. Fort met with GGE's Chief Operations Officer, Gerald Gregory to discuss her dissatisfaction with her new position in trucking and a proposed job description she had been asked to review and sign. (See Attachment 5 – Statement of Gerald Gregory.) As the Company continued to grow, the trucking division needed someone to fulfill the additional duties included in the proposed job description. (See Attachment 6 – Logistics Coordinator job description.) After consulting with Ms. Fort about her concerns, Mr. Gregory explained gave her an opportunity to revise the job description in an effort to collaborate and work together to make her position more effective for the growing company. Mr. Gregory requested that Ms. Fort revise the job description as she saw fit and revisit with him at the end of the week. Ms. Fort never provided the requested revisions and never signed the job description.

As a result of the Company's need for someone to perform the additional duties asked of Ms. Fort, GGE decided to terminate her position on November 2, 2018 (See Attachment 7 – Termination Notice.) Contrary to her claim, the reason Ms. Fort was ultimately discharged is because she never accepted the new position she was assigned to, despite the Company's efforts to work with her to make the position one that was effective for both her and the Company. (See Attachment 8 – Letter from Jack Mathis, Director of Trucking.) Furthermore, Ms. Fort could not have been retaliated against on the basis of reporting or complaining of racial discrimination because no such complaints or reports were ever made.

GGE has never discriminated against Ms. Fort on the basis of her race or anything else. The decision to terminate Ms. Fort's employment was solely based on the Company's need for someone to perform the duties of the position that Ms. Fort never accepted. There is no evidence whatsoever supporting any of the allegations made by Ms. Fort in her Charge. Therefore, the Charge should be dismissed.

Thank you for your consideration in this matter. Please contact me should you have any questions or need any additional information.

Kind Regards,

NEWLAND & ASSOCIATES, PLLC

Breanna Trombley

Breanna Trombley

Enclosures



SATELLITE DRIVEN EXCAVATION
Est 1950

**Anti-Harassment and Discrimination Policy**

It is the policy of Grant Garrett Excavating, Inc .to provide a work environment free from harassment and discrimination of any nature that may impede or have an adverse impact on your ability to perform work. In this regard, harassment in any form is unacceptable and will not be tolerated. Harassment is unwelcome verbal, visual, or physical conduct that creates an intimidating, offensive, or hostile working environment or that interferes with work performance.

**Definitions**

*1. Harassment may take many forms, but the most common forms include:*

- **Verbal harassment** – such as jokes, epithets, slurs, negative stereotyping, and unwelcome remarks about an individual's body, color, physical characteristics, or appearance, questions about a person's sexual practices, or gossiping about sexual relations;
- **Physical harassment** – such as physical interference with normal work, impeding or blocking movement, assault, unwelcome physical contact, leering at a person's body, and threatening, intimidating or hostile acts that relate to a protected characteristic;
- **Visual harassment** – such as offensive or obscene photographs, calendars, posters, cards, cartoons, e-mails, drawings and gestures, display of sexually suggestive or lewd objects, unwelcome notes or letters, and any other written or graphic material that denigrates or shows hostility or aversion toward an individual, because of a protected characteristic, that is placed on walls, bulletin boards, or elsewhere on the employer's premises or circulated in the workplace.

*2. Sexual harassment – There are two distinct categories of sexual harassment:*

- **Quid Pro Quo** – When an individual's submission to or rejection of unwelcome sexual conduct is used as a basis for employment decisions affecting that individual, including granting of employment benefits; and
- **Hostile Environment** – When unwelcome sexual conduct unreasonably interferes with an individual's job performance or creates an intimidating, hostile, or offensive working environment, even if it does not lead to tangible or economic job consequences.

Sexual harassment includes harassment of women by men, of men by women, and same sex gender-based harassment. Sexual harassment is unlawful whether it involves co-worker harassment, harassment by a supervisor or manager, or by persons doing business with or for the Company.

Grant Garrett Excavating, Inc. prohibits any and all conduct that may reasonably be interpreted as harassment as defined above whether or not such conduct is pervasive enough or severe enough to meet the technical legal requirements of harassment.



**EXHIBIT**

**1**

**Reporting and Investigation**

If you believe you have been subject to discrimination or harassment of any kind or conduct which violates this policy, you must immediately report the facts of the conduct to your supervisor or the Human Resources Department. If, for any reason, you do not feel comfortable discussing the matter with your supervisor, you should bring the matter to the attention of the Human Resources Department, your second-tier supervisor or any other member of management. The important thing is that you bring the matter to the Company's attention promptly so that any concern of discrimination or harassment can be investigated and addressed appropriately.

All complaints will be promptly and thoroughly investigated, and all information disclosed during the course of the investigation will remain confidential, except as necessary to conduct the investigation and take any remedial action, and in accordance with applicable law. All Employees and supervisors have a duty to cooperate in the investigation of alleged discrimination or harassment. In addition, failing to cooperate or deliberately providing false information during an investigation shall be grounds for disciplinary action, including termination of employment. At the conclusion of its investigation, if the Company determines a violation of policy has occurred, it will take effective remedial action commensurate with the severity of the offense. This action may include disciplinary action against the accused party, up to and including termination. Steps will be taken, as reasonable and necessary, to prevent any further violations of policy.

**Retaliation**

Retaliation for reporting any incidents of discrimination or harassment or perceived discrimination or harassment, for making any complaints of discrimination or harassment, or participating in any investigation of incidents of discrimination or harassment or perceived discrimination or harassment is strictly prohibited.

Any report of retaliation by the one accused of discrimination or harassment, or by co-workers, supervisors, or managers, will also be promptly and thoroughly investigated in accordance with the Company's investigation procedures outlined above. If a complaint of retaliation is substantiated, appropriate disciplinary action, up to and including discharge, will be taken.

**Modification**

This policy can be modified by the Company at any time without notice. Modification may be necessary, among other reasons, to maintain compliance with State and Federal regulations and/or accommodate organizational changes within the Company.



# Employee Handbook Acknowledgement

This is to acknowledge that I have recived a copy of Grant Garrett Excavating, Inc. **Employee Handbook** and understand that, while it sets forth terms and conditions of employment as well as many of the duties, responsibilities and obligations of employment with The Company, it is NOT designed to contain all rules, policies, processes or procedures that govern my employment.

Rules, policies and changes to same may also be communicated verbally, through email, by text or by MEMO.

I understand and agree that the **Employee Handbook** is not a contract of employment, in whole or in part; nor is it evidence of a contract between The Company and me.

I also acknowledge that, except for the policy of *At Will Employment,* and any separate valid written agreement between me and The Company, including any collective bargaining agreements, the terms and conditions set forth in this handbook may be modified, changed or omitted at any time as approved by the Chief Executive Officer of The Company; such changes it shall be our endeavor to provide in writing.

Any agreement between The Company and me pertaining to any term or condition of my employment must be in writing, and signed by both parties with witness thereof.

Acknowledged By:

_____
Printed Name

_____
Signature

_____
Date

EXHIBIT
2



## Employee Disciplinary Notice

Employee Name: Whityne Foet          Date: 9/15/18

Manager: Hamia Davis          Job Title: HR Asst

Department: HR

### TYPE OF OFFENSE

◯ Excessive Tardiness/Leaving Early          ◯ Absenteeism

☒ Violation of Company Policy          ☒ Work Performance

◯ Violation of Safety Rules          ◯ Improper or indecent Misconduct

◯ Poor Communication/Customer Service          ◯ Other: _____

o Verbal Warning          ☒ Written Warning          oTermination

Company remarks (if applicable):
Re: Scott Miser hired prior to drug screen results - Had to remove driver from truck which is a DOT violation worked for two days prior to removal.

Acknowledgment of Receipt of Handbook Notice

By signing this form, you confirm that you understand the information in this termination notice. You also confirm that you have received a company of the company handbook policy which states in Section 2.1 that this is an "At-Will" Employment and the company reserves the right to alter an "at-will" employee's benefits, pay rate, and assignments as it sees fit." It may be ended at any time and with or without notice.

Employee Signature          Date

8·27·18

Manager Signature          Date

8/15/18

Human Resource/Witness Signature          Date

8-15-18.

Comments:

**EXHIBIT**

**3**

March 12, 2019

U. S. Equal Employment Opportunity Commission
820 Louisiana Suite 200
Little Rock, AR 72201

Re: Charge#493-2019-00836 Fort -Grant Garrett Excavating

Dear Sir/Madam;

This letter serves as the response for charge#493-2019-00836 regarding the claims of discrimination
under: Title VII of the Civil Rights Act (Title VII) based on retaliation and Race involving discharged that
alleged to have occurred on November 2, 2018.

On behalf of Grant Garrett Excavating, the company has provided documentation as attachments to the
response to show that (we) Grant Garrett Excavating have a policy in place that provides a work free
environment free of any sort of discrimination of any type. On/or about 8/15/18, our company
investigated drivers' records. During this investigation, we discovered that an error was made by Ms.
Fort for not properly following the onboarding procedures. The investigation concluded information
pertaining to a CDL-driver only known as S.M. was interviewed, hired and employed for our trucking
division SPT under the discretion of Ms. Fort. We, discovered while auditing files that driver S.M.
worked as an employee of GGE for two consecutive days with an unapproved authorization

Our company policies states, during the hiring process the applicant authorize a pre-employment
screening which consist of a drug screen and criminal background check. After gaining successful
results, the final approval must be from the Director of Human Resource and these guidelines were not
followed by Ms. Fort.

This error not only caused an unsafe and hazardous working environment, but could have exposed GGE
and SPT to enormous fines and penalties. During our investigation the company was diligent in
determining that Ms. Fort was at fault. Ms. Fort received a formal disciplinary notice on that same day
of a written warning (See exhibit #3).

During our counseling process with her, she admitted her mistake and agreed to the steps necessary to
prevent such an occurrence in the future. The employee signed and acknowledgment for receipt of the
employee handbook, training class and the policy that was ultimately violated. (See exhibit #2) We
discussed a performance improvement plan in efforts to help the employee succeed.

At the time of this meeting and thereafter, Ms. Fort had an opportunity to discuss any alleged
discrimination during any encounter this was not communicated to the HR Manager or Director. Instead,
she continued to work in the SPT division and seemed very accepting in her position.

We look forward to working with EEOC to clarify and help to establish the lack of a discriminatory
animus.



Sincerely,

Sharia Davis
Grant Garrett Excavating
Human Resource Manager

**STATEMENT OF GERALD GREGORY**

1.      My name is Gerald Gregory. I am currently the Chief Operating Officer of Grant Garrett Excavating, Inc.

2.      On October 1, 2018, Ms. Fort requested a meeting with me, without specifically stating what she wanted to meet about. (See attached email dated Oct. 1, 2018). I responded to her request and we met that afternoon in my office.

3.      The topic of our discussion was that Ms. Fort was unhappy with her new position in the trucking division and did not want to sign a copy of the job description that had been prepared for her new position, which her supervisor, Mr. Mathis, had asked her to review and sign.

4.      Ms. Fort explained that she did not like the job duties that were included in the job description, and that she did not want to sign it because it contained duties that she felt were outside of her abilities, and also omitted certain duties that she felt she was currently performing but were not included in the job description.

5.      After listening to her concerns, I advised her to revise the job description to her satisfaction and to reschedule a meeting with me to review her revised description by Friday, October 5, 2018.

6.      At no time during our meeting did Ms. Fort ever express any concerns that she was being discriminated against based on her race.

7.      On October 5, 2018, I had not received anything or heard from Ms. Fort regarding our meeting earlier that week, so I stopped by her office to check in and remind her about the information I had requested. She responded that she was still working on it.

8.      Despite my reminding her about our discussion and reiterating my request, she never provided a revised job description or any other information on the matter.

9.      GGE provided Ms. Fort with a platform to address any concerns of discrimination, as well as a reporting avenue clearly outlined in her employee handbook, which she received a copy of and acknowledged. She never expressed any concerns of discrimination to me, and I was never advised that she had expressed or reported any concerns to anyone else.

10.      Ms. Fort also interacted with our human resource department daily, and at no point did she ever express any concerns of discrimination.

11.      Contrary to her claim, the reason for Ms. Fort's termination from GGE was her inability and unwillingness to perform the duties of her new position. She never made any claims of discrimination on the basis of race and, therefore could not have been retaliated against.

Gerald Gregory



EXHIBIT
5

## Gerald Gregory

| | |
|---|---|
| **From:** | Gerald Gregory |
| **Sent:** | Monday, October 1, 2018 2:57 PM |
| **To:** | Whityne Fort |
| **Subject:** | RE: Can I schedule a meeting with you today. |

Yes, do you have time now?

**From:** Whityne Fort
**Sent:** Monday, October 1, 2018 9:49 AM
**To:** Gerald Gregory <gerald.gregory@garrettx.com>
**Subject:** Can I schedule a meeting with you today.

Thank you and Have a Great Day.

Whityne A.Fort
Logistic Coordinator



Grant Garrett Excavating, Inc.
12913 I-30
Benton, AR 72015
E-mail: whityne.fort@garrettx.com
Phone Number: 501-520-5200
Cell Phone: 501-295-5093
Fax Number: 501-443-8646

**CONFIDENTIALITY NOTICE:** This email, including attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, or disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender immediately and destroy all copies of the original message.

1



## LOGISTIC COORDINATOR

**Logistic Coordinator position will be as follows record keeping is a key component of a logistics coordinator's job. The position must scan or enter all shipments into a computer system, calculate freight and postal rates, inspect and count all items processed, and later verify items against each invoice.**

| Reports To: | **Jay Mathis-Trucking Director** |
|---|---|
| Direct Supervisor: | **None** (all employees report to Truck Pusher or Director) |
| Hours: | **8:00 am-5:00 pm** |
| Schedule: | **Monday-Friday (schedule vary due to company needs)** |

## QUALIFICATIONS REQUIREMENTS:

- The Logistic Manager is responsible for the route movement of outgoing and incoming freight shipments. The job description stipulates that he must correspond with drivers, supervisors, superintendents and customers to arrange delivery or pickup of cargo for delivery. Recruit and coordinate logistics staff (e.g. truck drivers) according to availabilities and requirements. Advanced experience in DOT/Federal Monitor Carrier Regulation a requirement.

## ESSENTIAL DUTIES AND RESPONSIBILITES

*Complete all DOT/DQ files compliance
* Set up training for CDL/Non-drivers for DOT monthly, quarterly or annually.
*Provide the necessary compliance logs, paperwork for all Non/CDL drivers for FMCR
*Good communications skills
*Knowledge in construction
*Very puntual
*Work with representatives of JJ Killer for compliance and submit all documents and follow- up on a daily or weekly basis
*Conduct new hire orientation for any driver under FMCSA/DOT regulations
* Driver Policy Manual and work with HR on background check and drug test assistance
*Assist with all random drug test set-up with appointments and adhere to drug test results to HR.
*Monitor Fleetmatics for driver performance and violations, set-up performance and coaching violations with HR.



*Assist with collecting forms for drivers' signatures and place a copy in DOT files and HR, input new hires in JJ Keller/Fleetmatics.

*Ensure any expired drivers are inactive in system and report to HR.

* In put daily purchase orders on spreadsheet and monthly cost reports of trucking parts, tires and misc.

*Work with making sure drivers are always DOT compliance

*Interpret and convey haul rates to clients

*Work with Human Resource Manager with personnel paperwork and compliance reporting

*Work with Human Resource Manager on confidentiality of all drivers' files, random drug testing and report any/all safety or discipline violations.

*Input equipment and monitor the equipment files.

*Verify and check all expiration dates or reassure compliance.

* Report any expiration dates to Managers.

*Monitor log violations and report to Trucking Manager and Truck Pusher Supervisor

*Work with accounting department manager on billing, rates invoices and hired trucking co.

*Administer ticket watch system to assure all superintendent accuracy with correct tonnage and yards per day/job and streamline loads counts and forward to superintendents.

*Monitor all driver and contractor daily paperwork per job and place on spreadsheet.

*Bill all outside work from driver load tickets, create total tonnage, rate and company to bill and present to Comptroller.

*Requisition all office supplies for manger approval and distribute to staff as needed.

*Complete DOT files completely for JJ Keller, submit, follow-up in timely manner to JJ Keller/HR Mgr. regularly and maintain DOT compliance at all times.

*Responsible for all DOT employee files in compliance for DOT survey at all times

*CDL new hire orientation training, paperwork (DOT) and distribution of mandatory material.

*File all necessary trucking materials.

*Answer telephone respond to emails, fax or any and all correspondence and assist all drivers, vendors, supervisors and customers with trucking questions and concerns.

**Logistic Coordinator is responsible for the route movement of outgoing and incoming freight shipments. The job description stipulates that he must correspond with drivers to arrange pickup of materials and freight for delivery.**

- Five years' experience as logistics coordinator or supervisory field.
- Experience in customer service will be appreciated
- Knowledge of laws, regulations and ISO requirements
- Ability to work with little supervision and track multiple processes
- Computer-savvy with a working knowledge of logistics software (ERP)
- Outstanding organizational and coordination abilities
- Excellent communication and interpersonal skills

## EDUCATION AND TRAINING:

A high school diploma is the minimum educational requirement BS/BA in business administration, minimum of five years' experience in a construction or trucking management position or relevant.

## PHYSICAL DEMANDS AND ABILITIES:

- Regularly spend long hours sitting and standing
- Regularly spend long hours in intense concentration
- Regularly use hands and fingers to handle, control or fell objects
- Regularly speak clearly so listeners can understand
- Occasionally lift to 25 lbs.
- Regularly works in hazardous environment
- Regularly work in loud environment
- Regularly spend long hours on the telephone.

I, _____ have read/receive a copy of my job description and understand the conditions of my GGE duties and responsibilities.

Employee Signature: _____ Date: _____

Trucing Director: _____ Date: _____

Human Resource Manager: _____ Date: 9/12/18

Grant Garrett Excavating Inc. is an Equal Opportunities/Affirmative Action Employer. All qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender, identity, national origin, disability, veteran status or other characteristics protected by law. GGE is a background screening, drug-free workplace.



## Employee Disciplinary Notice

Employee Name: Whitney Tart          Date: 11/2/18

Manager: Jack Mallis          Job Title: Logistics Coordinator

Department: Trucking

### TYPE OF OFFENSE

◯ Excessive Tardiness/Leaving Early          ◯ Absenteeism

◯ Violation of Company Policy          ◯ Work Performance

◯ Violation of Safety Rules          ◯ Improper or indecent Misconduct

◯ Poor Communication/Customer Service          ◯ Other: _____

o Verbal Warning          oWritten Warning          ☒Termination

Company remarks (if applicable):
Termination of Relationship with GGB.

### Acknowledgment of Receipt of Handbook Notice

By signing this form, you confirm that you understand the information in this termination notice. You also confirm that you have received a company of the company handbook policy which states in Section 2.1 that this is an "At-Will" Employment and the company reserves the right to alter an "at-will" employee's benefits, pay rate, and assignments as it sees fit." It may be ended at any time and with or without notice.

_Refused to Sign_          11/2/18

Employee Signature          Date

_Jack Mallis_          11/2/18

Manager Signature          Date

_Daria Davis, HRM_          11/6/18

Human Resource/Witness Signature          Date

Comments:

**EXHIBIT**

**7**



Jack Mathis
Director of Trucking
Grant Garrett Excavating
12913 I-30
Benton Ar, 71913
501-520-5200

To whom it may concern:
Regarding former employee Whityne Fort.

     Ms. Fort worked in the position under my direction for approximately 3 months full time. Ms. Fort's termination resulted because she refused to sign the job duty acceptance form required for the position she accepted. We started looking at other options and decided to create a new position with added responsibilities such as customer sales, trucking billing, dispatching, accounts receivable and accounts payable.

There were also a couple of performance issues brought to my attention which included on-boarding drivers.

Performance Issues:
(1) On approximately 6/30/18 Whityne reported new hire driver 1 as cleared for duty. We put him in a truck, and he went to work. She hadn't received a negative drug test back. Federal Motor Carrier Regulation 382.301(a) states an employer must drug test a new hire CMV driver and that driver can't perform safety-sensitive functions until the company receives a negative result. The next day she received the result which were positive and called me. I immediately relieved driver 1 from duty and terminated him. She was coached by Justin McKenzie with human resources.
(2) On approximately 7/24/18 the same issue occurred again. She was written up by Sharia Davis with human resources.

     Whityne never accepted the position. She stated to me she wanted to talk to upper management such as Human Resources Director Justin McKenzie and COO Gerald Gregory. Both told me they instructed her to sign. She never did.
     After approximately 2 months we started looking at other ways to be more effective with our growing company. We decided to eliminate her position and create a new position incorporating those job duties.

Thanks
Jack Mathis



Charging Party:  Whityne A.  Fort
Grant Garrett Excavating, Inc.
Company Address

EEOC Charge No:
Phone:
Email

June 19,2019
Equal Employment Opportunity Commission
c/o Ms. Vera Stumper, Sr. Federal Investigator
820 Louisiana, Suite 200
Little Rock, AR 72201
493-2019-00836
501-324-6213
Vera.Stumper@eeoc.gov

RE: Response to position statement from GGE Inc.

Dear Ms. Stumper:

 Please accept this letter as a formal response to the
position from GGE Inc. reasons for terminating my
employment due to wrongful termination. "GGE denied that it
has ever discriminated against Whityne Fort in anyway". This
letter along with exhibits, Federal and State Laws, Initial
complaint letter to EEOC, and Testimonies of others on my
behalf will show proof that I was discriminated against as well
as other protected minorities was discriminated against without
a doubt.

 Arkansas, like many other states, is an employment at
will jurisdiction. Ostensibly, what this means is that, unless
there is a contract stating otherwise, an employer can fire an
employee for any reason — or no reason. But despite this
broad pronouncement, there are numerous state and federal
laws that prohibit employers from firing employees for certain
reasons:

- Racial discrimination
- Religious discrimination
- Gender or pregnancy discrimination
- Disability discrimination

- Retaliation
- Union affiliation or activities
- National Guard or Reserve duties
- On the job injury

GGE is subject to various laws that prohibit them from discrimination in the workplace, and thus Whityne Fort, as an employee

An employer can break many state and federal labor laws when they wrongfully terminate an at-will employee. This likely results because the employer has no legal right to discriminate, even if the employee has signed an at-will employee agreement upon starting their employment.

Laws enacted prohibit discrimination based on many categories. Discrimination based on an employee's race, gender, date of birth, and religion are a few examples of the prohibited categories.

Discrimination does not form the basis of all claims of wrongful termination. If your employer terminates your employment as a result of retaliatory conduct because you have exercised a legal right, you may have a wrongful termination claim of action.  Additionally, if an employer attempts to terminate your employment based on your refusal to partake in illegal activities, you may succeed with a claim of wrongful termination.

Additionally, if an employer attempts to terminate your employment based on your refusal to partake in illegal activities, you may succeed with a claim of wrongful termination. The damages available to an employee who has filed a claim of wrongful termination can include c A victim may experience racial harassment because of their race, skin color, ancestry, origin country or citizenship.

2

Even perceived attributes of a certain ethnicity (curly hair, accents, customs, beliefs or clothing) may be the cause. Racial harassment often looks like:

- Racial slurs(Witnessed)
- Racial insults(Witnessed)
- Racial jokes(Witnessed)
- Degrading comments(Witnessed)
- Disgust(Witnessed)
- Intolerance of differences (Whityne Fort)

****Or any other behavior that creates an intimidating and offensive work environment for the minorities, trans genders and obsess employees.

**Personal harassment** is a form of workplace harassment that's not based on one of the protected classes (such as race, gender or religion).

Simply, it's bullying in its most basic form and it's not illegal but can be damaging nevertheless.

Personal harassment includes:
- Inappropriate comments (Witnessed)
- Offensive jokes(Witnessed)
- Personal humiliation (Whityne Fort)
- Critical remarks(Witnessed)
- Ostracizing behaviors (Whityne Fort)
- Intimidation tactics (Whityne Fort)

Or any other behavior that creates an intimidating and offensive work environment for the minorities, trans genders and obsess employees.

**Power harassment** is a common form of workplace harassment that's characterized by a power disparity between the harasser and the harassed.

3

The harasser exercises their power by bullying a victim who is lower on the office hierarchy.

In many cases, the harasser is a supervisor or manager who victimizes their subordinates.

Power harassment isn't limited to a certain type of behavior. It can be verbal in the form of intimidation or it can be physical in the form of acts of violence.

- Demeaning demands far below the employee's capability

**Psychological harassment** has a negative impact on a person's psychological well-being. Whityne was over worked while performing two job titles and responsibilities and was not compensated monetary for doing so.

Victims of psychological harassment often feel put down and belittled on a personal level, a professional level or both.

The damage to a victim's psychological well-being often creates a domino effect, impacting their physical health, social life and work life. Whityne Fort's character was taunted by the following in the workplace:

- Isolating or denying Whityne Fort's presence by moving her office into a trailer by herself.
- Belittling or trivializing the victim's thoughts by ignoring her complaints regarding retaliation and discrimination by Jackie Mathis.
- Discrediting or spreading rumors about Whityne Fort regarding the negative drug screen to other employees within the company. Also pay information was disclosed by a Caucasian female but it was blame on me by several upper management employees tainted Whityne Fort's character. This was a cover to protect the white Caucasian female who was a relative of the office manager/ accountant.

4

- Opposing or challenging everything that Whityne Fort says regarding DOT compliance which was Miss Fort's expertise.

**Retaliation harassment** is a subtle form of retaliation and an often-overlooked type of workplace harassment. Retaliation harassment occurs when a person harasses someone else to get revenge and to prevent the victim from behaving in such a way again. This type of harassment typically has three parts:

1. Employee A (Whityne Fort) filed a complaint about Employee B (Jackie Mathis).
2. Employee B (Jackie Mathis) found out about the complaint and who made it.
3. Employee B (Jackie Mathis) harassed Employee A (Whityne Fort) to get revenge and deter them from filing further complaints.
4. This was wrongful termination, to hire a white Caucasian female friend (Cora Shepard) with no experience who previously worked as a receptionist for 2 years through a temp agency with another trucking company and was given more money than Whityne Fort. Anonymous letter address to EEOC will prove
5. Jay Mathis according Anonymous source on my behalf to EEOC states that she was to receive extensive training by Grant Garrett and Jackie Mathis. Before Ms. Shepard was hired Jackie Mathis inquired to several employees how could he get rid of Whityne Fort so he could hire Cora Shepard a personal friend. The anonymous source stated in their letter to EEOC that they too were asked how to get rid of Miss Fort. They stated it is illegal and you have no grounds to terminate Miss Fort, this could result in a lawsuit.
6. GGE terminated Miss Fort despite advise given by several employees.
7. Ms. Shepard was offered the starting salary of 50K per year which was what Miss Fort asked for but was fired to keep from paying her due to retaliation, discrimination, wrongful termination and cronyism.

5

8. Employee B (Jackie Mathis), in this case, would be harassing Employee A (Whityne Fort) as retaliation.

**Verbal harassment** can be the result of personality conflicts in Drug Screening the workplace that have escalated beyond the casual eye roll or something more serious. Jackie Mathis displayed verbal harassment behaviors which included things like yelling, insulting comments to other employees as victims in public or in private that was consistently mean or unpleasant. Owner of GGE has done this also. I witness the Owner calling an employee a crake head who had a drug problem public. Whityne Fort experience this behavior from Jackie Mathis as well as witness it towards other employees. Meeting with HR Team, Whityne Fort was told by HR Director don't take it personal, he just going through a bad divorce.

If this is aimed at someone in a protected class, it is unlawful. As the result of being wrongful terminated and treated unfairly. Whityne Fort felt shame and guilt, loss of passions and even increased blood pressure due to the hostile environment.

Grant Garrett has created a toxic culture for people of color in the office by demoting and underpaying, ignoring harassment complaints and retaliation against those who spoke up. There are complaints that go beyond Miss Fort's, that have purposely been ignored. I simply want to corrected the unfair treatment of minorities at GGE. Miss Fort wanted to be treated fairly and want others also. A company culture is the value and practices that are agreed and shared among the members of the company. GGE has policies and procedures in place that are not being followed to protect employee who complain about discrimination, harassment, wage discrimination, age and gender discrimination.

• Toxic culture is that employees have little to no latitude in performing their jobs. Every procedure is spelled out for them. If they are rewarded at all, they are rewarded for hitting their goals and following the rules, but never for having breakout ideas or pushing for much-needed changes -- activities that could get them fired.

In the business world, **nepotism** is the practice of showing favoritism toward one's family members or friends in economic or employment terms. ... In fact, in many small businesses **nepotism** is considered a synonym for "succession." A claim for **employment discrimination** must be able to show that an employer's practices disadvantaged employees based on one of those prohibited categories.

Keep in mind that nepotism generally means providing workplace opportunities to employees based on personal relationships rather than experience and qualifications. Hiring or promoting friends and family isn't necessarily unfair if the person is qualified.

Whityne Fort spoke human resources representative to see if the problem can be resolved. The behavior continued and caused Whityne Fort significant distress (as opposed to just an annoyance). Whityne Fort spoke the HR Mgr. Sharia Davis on at least numerous occasions regarding how she felt that she was being discriminated against and retaliated against by Jackie Mathis.  Mrs. Davis stated that she would look into the situation. I notice according to her written statement to EEOC she did not mention the complaint be filed nor the results of the complaint filed. However, I contacted everyone with the chain of command according to GGE Employee handbook regarding Anti- Harassment, Discrimination, Retaliation and Wage discrimination.

**Gerald Gregory** who is presently the COO and HR Director also failed to mention on one incidence that I did not file a complaint and then turned around and state I did file a

7

complaint regarding Jackie Mathis unfair treatment toward Whityne Fort, incorrect job description which did not coincide with the duties I was and had been performing for months. So therefore Mr. Gregory statement is also untrue, he stated you will need to get back with Jackie Mathis to discuss and come to an agreement on the duties and responsibilities as well compensation for the position. I was wondering why would go to Mr. Mathis after a complaint had been filed against him, Mr. Gregory also stated he would look into the complaint. After Mathis refused to converse with me regarding the compensation and job description. According initial letter to EEOC I asked to return to old position, was told position was eliminated. Mr. Gregory stated had he known early that I was having issue with Mathis he would have found me another position. Mr. Gregory unavailable to review job description. Then I was terminated, exactly one day before I was supposed to take a week off as a FLMA leave to care for my mother who was due to have a knee replacement. However, GGE does not have a FLMA policy in place. I requested the leave of absence approximately 2-3-months' notice before the surgery.

According to **The Family and Medical Leave Act (FMLA)** is a federal law that gives eligible employees the right to take time off for certain caretaking responsibilities and health problems. This law has helped thousands of employee's balance work and family obligations. However, not every employer understands the law -- and some willfully violate its provisions. This article explains some common violations of the FMLA.

Employers with at least 50 employees must comply with the FMLA. Not every employee of a covered employer is eligible for leave, however. An employee must have worked for at least a year, and at least 1,250 hours during the previous year, at a facility that has at least 50 employees within a 75-mile radius, to be covered.

- An employee must have worked for at least a year, and at least 1,250 hours during the previous year, at a facility that has at least 50 employees within a 75-mile radius, to be covered.

8

- Disciplining or firing employees for taking leave. Only the least savvy employer would punish an employee for using the FMLA. However, subtler forms of discipline can crop up, such as counting time off against an employee, giving an employee a bad performance review based on work that wasn't completed because of the employee's leave, and so on.

This kind of situation can be considered a hostile work environment and it's not allowed according to Breanna Trombley, Associate Attorney and family friend of the owner. Ms. Trombley Fiancé is also an employee at GGE. All key members at GGE has family members who also work at GGE, this is a clear indication that nepotism and cronyism exist at GGE.

GGE has made the decision to base the Whityne Fort's termination off her not signing her job description. Job descriptions are not legal contracts, nor did I receive an offer letter or job description for the HR Executive Assistant. So, therefore did I not accept the position and job duties. A signature is not required for a job description. I have included the original job description that was posted on indeed. The job description that was used as an exhibit has been modified, the second page insert is not an original document the type font is different than the first and third page and it has been added to the job description.

9

- **Jackie Mathis,** supervisor required me to perform job duties not listed on your job description that were unethical, unlawful or illegal. Which is legal grounds for a lawsuit. **For example: I was asked by Jackie Mathis to falsify CDL Logs books for unassigned mileage, this is unlawful and unethical act under the Federal Motor Carrier Safety Administration(FMCSA). I felt persuaded to comply due fear of losing my job, and knowingly need to support an immediate family member due to an upcoming surgery.**

- Organizations benefit from writing job descriptions for their employees. Job descriptions aren't legally required, but they're important for compliance with federal and state labor and employment laws. They also establish guidelines for employee performance, which is a tremendous help when appraisal time rolls around. They are probably the most important communication tool an employer can have. Job descriptions can always help, unless they're used to force an employee to perform unethical tasks, which any employer would be foolish to require in writing.

- Because job descriptions aren't legal documents, they can be informal, which can appeal to small businesses. Small businesses often do not make job descriptions a priority because they want to preserve the friendly and informal work environment for which many of them are known. Job descriptions can be formal documents or they can be informal lists of duties and responsibilities. It all depends on the organizational culture and what works better with the workforce. Regardless of whether they're formal or informal, they must be updated

10

regularly, preferably with input from the employee who performs the job duties.

- The contents of most job descriptions include duties, tasks, qualifications and requirements. It's difficult to include specific and overly detailed tasks because they may change too often. Specific tasks aren't always necessary unless the job description is for an entry-level position, and even then, they needn't be extremely detailed or the job description becomes a mere checklist and not a fluid document that gives an employee opportunity for growth and new work challenges. Qualifications are skills the employee must have to perform the job duties. Requirements might include education level, years of experience or industry knowledge as fundamentals the employee must have to do the job. In addition, many job descriptions indicate the position's exempt classification, pay grade, reporting relationship and department or business unit.

- Every employer can benefit from providing employees with job descriptions, even if they're not legally required to do so. Regardless of the size of the organization, job descriptions protect employers' interests by enabling the company to produce written documentation of the employee's duties in case performance issues arise during the employee's tenure. Human resources best practices suggest providing applicants and candidates with job descriptions before you extend an offer, so they're clear on what the jobs entail.

- Most, if not all, job descriptions contain that all-too-familiar disclaimer that says the employee must perform "any and all other duties assigned by the supervisor." This doesn't necessarily mean the employee can be asked to perform duties far outside her

11

expertise and then be penalized because the performance is subpar. The disclaimer usually covers additions that don't result in material changes to the employee's responsibilities. Another disclaimer that all job descriptions should have is a statement that the job description doesn't constitute a contract of employment and that the company may exercise its employment-at-will rights at any time.

The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment.  Asserting these EEO rights is called "protected activity," and it can take many forms.  For example, it is unlawful to retaliate against applicants or employees for:

- filing or being a witness in an EEO charge, complaint, investigation, or lawsuit
- communicating with a supervisor or manager about employment discrimination, including harassment
- answering questions during an employer investigation of alleged harassment
- refusing to follow orders that would result in discrimination
- resisting sexual advances, or intervening to protect others
- requesting accommodation of a disability or for a religious practice
- asking managers or co-workers about salary information to uncover potentially discriminatory wages.

Participating in a complaint process is protected from retaliation under all circumstances. Other acts to oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it.

12

Engaging in EEO activity, however, does not shield an employee from all discipline or discharge. Employers are free to discipline or terminate workers if motivated by *non-retaliatory and non-discriminatory* reasons that would otherwise result in such consequences. However, an employer is not allowed to do anything in response to EEO activity that would discourage someone from resisting or complaining about future discrimination.

For example, depending on the facts, it could be retaliation if an employer acts because of the employee's EEO activity to:

- reprimand the employee or give a performance evaluation that is lower than it should be;
- transfer the employee to a less desirable position;
- engage in verbal or physical abuse;
- threaten to make, or actually make reports to authorities (such as reporting immigration status or contacting the police);
- increase scrutiny;
- spread false rumors, treat a family member negatively (for example, cancel a contract with the person's spouse); or
- make the person's work more difficult (for example, punishing an employee for an EEO complaint by purposefully changing his work schedule to conflict with family responsibilities

I strongly believed that I was placed in the trucking department to bring GGE up to compliance, because they failed miserably the previous year. The HR Director, HR Mgr. and the COO failed to investigate after been told numerous time they would investigate but no results were ever disclosed be termination. I strongly believe Mrs. Davis has been given a HR Mgr. title with no authority to perform her job and responsibilities as a SHRM certified HR representative GGE purposely bypasses Mrs. Davis on issues in which they don't want her involved. I also believe several employees have been coerced to write statement that are untrue regarding this lawsuit in fear of

13

losing their jobs and speaking out against the wrong doings of GGE.

According to Anonymous source letter to EEOC on my behalf stated that Mr. Mathis no longer works for the company because he resigned to keep from replying to EEOC statement because he didn't have ground for terminating Miss Fort. His statement is the only statement without a signature. I believe that Jackie Mathis be did not write his statement and it was falsified. After Mathis resigned Ms. Shepard was appointed Trucking Director with a higher salary in less than six months.

After being terminated the company failed investigate why I was terminated. HR stated she didn't know why and she would look into. But by I guess by Whityne Fort no longer being employed, it wasn't a priority. I was terminated on November 2,2019 Ms. Shepard was working in Whityne Fort position on November 5,2019. I don't believe she was ever interviewed, drug tested or given a background check.

The HR Mgr. stated she was unaware of who Ms. Shepard was and who hired her when I phone on the November 5, 2019 inquiring why I was fired. Ms. Davis was unaware that I had been fired. Ms. Shepard answered Ms. Fort's company cell phone. Ms. Shepard stated that Ms. Fort no longer worked for the GGE and she had taken her place as a Logistic Coordinator, then Assistant Trucking Supervisor and presently Trucking Director. Ms. Shepard title has change three times and pay has change two times each time her salary increased.

GGE discrimination against Whityne Fort on the basis of race, retaliation, intentional infliction of emotional distress, violations of the Family Medical Leave Act. She raised the issues with HR supervisors and management, who promised

14

Ms. Fort complaints would be addressed. She complained about the discrimination to HR supervisors and management multiple times, but they allegedly did nothing. Whityne Fort suffered "mental anguish and emotional distress" due to the harassment, retaliation and discrimination. According evidence provided to EEOC this case should not be dismissed because although GGE has written policies in place and do not adhere to their employment policies. GGE has broken several Federal and State Laws.

Sincerely,

Charging Party:  Whityne A. Fort

*Position  Response Statement*
Grant Garrett Excavating, Inc.



## Employee Disciplinary Notice

Employee Name: _____   Date: 11/2/18

Manager: _____   Job Title: Logistics Coordinator

Department: Trucking

### TYPE OF OFFENSE

◯ Excessive Tardiness/Leaving Early        ◯ Absenteeism

◯ Violation of Company Policy              ◯ Work Performance

◯ Violation of Safety Rules               ◯ Improper or indecent Misconduct

◯ Poor Communication/Customer Service      ◯ Other: _____

o Verbal Warning        oWritten Warning        ☒Termination

Company remarks (if applicable):
Termination of Relationship with GGE.

Acknowledgment of Receipt of Handbook Notice

By signing this form, you confirm that you understand the information in this termination notice. You also confirm that you have received a company of the company handbook policy which states in Section 2.1 that this is an "At-Will" Employment and the company reserves the right to alter an "at-will" employee's benefits, pay rate, and assignments as it sees fit." It may be ended at any time and with or without notice.

_____        11/2/18

Employee Signature              Date

_____        11/2/18

Manager Signature               Date

_____        _____

Human Resource/Witness Signature        Date

Comments: _____

# indeed

## Logistic Coordinator
Grant Garrett Excavating, Inc - Benton, AR

This job posting is no longer available on Indeed.

Related searches:

Logistic Coordinator jobs in Benton, AR
Grant Garrett Excavating, Inc jobs in Benton, AR

A logistic coordinator is responsible for the route movement of outgoing and incoming freight shipments. The individual stipulates that he must correspond with drivers, superintendents and customers to arrange delivery or pickup of products for delivery. Coordinate truck drivers according to availabilities and requirements. Advanced experience in DOT/Federal Monitor Carrier Regulation a plus. Complete all DOT/DQ files and keep in compliance, set-up training for CDL/Non-drivers for DOT. Provide the necessary compliance logs, paperwork for all non/CDL drivers for FMCR, set-up all drivers for DQ files, monitor all med card/DQ file monthly. Enter drivers into JJ Keller for compliance and submit all documents and follow-up on a daily or weekly basis, conduct new hire orientation for any driver under FMCSA regulations, driver policy manual and work with HR on background check and drug test assistance. Assist with all random drug test set-up with appointments and adhere to drug test results to HR. Monitor fleetmatics for deriver performance and violations. Put in parts and repair orders in JJ Keller Maintenance, prepare spreadsheet and report to Trucking Manager for approval. Input equipment and monitor the equipment files, verify and check all expiration dates or reassure compliance. Administer ticket watch system to assure all superintendent accuracy with correct tonnage and yards per day/job. Bill all outside work from driver load tickets, rate and company to bill.

Job Type: Full-time

Experience:

- Logistics: 1 year (Preferred)

9 months ago

New Search

View Indeed in: **Mobile** - Classic

https://www.indeed.com/m/viewjob?jk=b31d327e...

 **Employee Disciplinary Notice**

Employee Name: Whutyne Tout                    Date: 8/15/18

Manager: SHAMIA DAVIS                    Job Title: HR ASST

Department: HR

## TYPE OF OFFENSE

○ Excessive Tardiness/Leaving Early          ○ Absenteeism

⊗ Violation of Company Policy               ⊗ Work Performance

○ Violation of Safety Rules                 ○ Improper or indecent Misconduct

○ Poor Communication/Customer Service       ○ Other: _____

| o Verbal Warning | ⊗Written Warning | oTermination |

Company remarks (if applicable):
Re: Scott Miser hired prior to drug screen results - Had to remove driver from truck which is a DOT violation) worked for two days prior to removal.

Acknowledgment of Receipt of Handbook Notice

By signing this form, you confirm that you understand the information in this termination notice. You also confirm that you have received a company of the company handbook policy which states in Section 2.1 that this is an "At-Will" Employment and the company reserves the right to alter an "at-will" employee's benefits, pay rate, and assignments as it sees fit." It may be ended at any time and with or without notice.

Employee Signature                          Date 8-27-18

Manager Signature                           Date 8/15/18

Human Resource/Witness Signature            Date 8-15-18.

Comments:

**EXHIBIT** 3



Driver Services Compliance User's Guide

# Driver Qualification File Management Program



*We are proud to be your regulatory compliance service partner*



J. J. Keller
& Associates, Inc.®
**Since 1953**

SA086KG5-097 Copyright 2017 J. J. Keller & Associates, Inc.



# Driver Qualification File Management Program

**Service Components:**

- Audit according to Federal Motor Carrier Safety Regulations Part 391 and other related parts

- Provide electronic images of files and purge in accordance with the regulatory record keeping requirements

- Provide access to the Client Web Portal for generating compliance reports

- Send notification of file deficiencies to the designated contact(s)

- DOT Audit support – in the event of an audit, contact your dedicated Client Service Representative for assistance

- Original files will be returned to the corporate office once audit is complete

| Standard Driver Qualification File Requirements | |
|---|---|
| **FORM** | **REGULATION** |
| Driver Application | §391.21 |
| Safety Performance History Records Request | §391.23 |
| Road Test & Certificate | §391.31(g) |
| Medical Examiner's Certificate | §391.43(g) |
| Motor Vehicle Report/Driving Record (MVR) | §391.23 |
| Entry Level Driver Training Certificate | §380 Subpart E |
| Motor Vehicle Record Release form | J. J. Keller requirement |
| Copy of Driver's License | J. J. Keller requirement |
| *Annual Review of Driving Record | §391.25 |
| *Certification of Violations | §391.27 |

*These items are not required to be in the file until the employee has been a driver with the company for one year.*



J. J. Keller
& Associates, Inc.®
**Since 1953**

# Driver Qualification File Management Program

## Notification Procedure:

• Notification of file deficiencies are sent via email to the designated contact(s)

### Sample Notification

| | |
|---|---|
| **J. J. Keller** & Associates, Inc.® Since 1953 | Keller Transportation To: Contact Name <contactemail@jjkeller.com> CC: Contact Name <contactemail@jjkeller.com> Escalated: Contact Name <contactemail@jjkeller.com> |

**Location Name**

**Employee Name**         **Employee Code**

**Form Name (FORM)**         Single page 1 of 1

DRIVING EXPERIENCE MISSING/INCOMPLETE

On your original application the driving experience was missing. Complete the following information.

If you have no driving experience in the last 3 years check here _____ or complete the following in full:

| CLASS OF EQUIPMENT | TYPE OF EQUIP (Van, Tank Flat etc.) | DATES FROM   TO | APPROX. NO. OF MILES TOTAL |
|---|---|---|---|
| Straight Truck | | | |
| Tractor & Semi-Trailer | | | |
| Tractor & Two-Trailers | | | |
| Motorcoach-School Bus | | | |
| (>15 or 8 Passengers) | N/A | | |
| Motorcoach-School Bus | | | |
| (> than 15 Passengers) | N/A | | |
| Other | | | |

Driver's Signature_____ Date_____

This certifies that this form was completed by me and that all entries on it and information in it are true and complete to the best of my knowledge.

### Expiring Items

• Notification of expiring items are sent via email to the designated contact(s) twice before expiration and reoccurring every 30 days after expiration

| Medical Examiner's Certificate | Driver's License |
|---|---|
| Annual Review/Certification of Violations | Driving Record/Motor Vehicle Report (MVR) |

### Client Responsibilities

• Send copies of the correction or update to J. J. Keller via fax or email

• Ensure that all documents sent are clear and legible



# Driver Qualification File Management Program

| Terminology | Definition |
|---|---|
| **Driver** | Any person who operates a commercial motor vehicle. |
| **Commercial Motor Vehicle** | *Any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle -*<br><br>• Has a gross vehicle weight rating (GVWR) or gross combination weight rating of (GCWR), or gross vehicle weight or gross combination weight of 10,001 pounds or more, whichever is greater<br><br>• Is designed or used to transport more than 8 passengers including the driver for compensation<br><br>• Is designed or used to transport more than 15 passengers including the driver and is not used to transport passengers for compensation<br><br>• Is transporting hazardous materials in quantities requiring the vehicle to be placarded |



**J. J. Keller**
**& Associates, Inc.®**
*Since 1953*

# Driver Qualification File Management Program

## Data Security

*The security of your data is of utmost importance to us. Every associate is trained in data security, and must sign a legal confidentiality agreement. Our staff Privacy Official maintains oversight of our written policy regarding the protection of client information.*

### Additional Considerations:

- We handle over 100,000 drug tests annually
- We have 16.8 million tax documents in storage, filed on behalf of our clients
- We audit and process over 4.6 million fuel tax documents for our clients
- Common confidential documents we handle regularly include:
    – Name
    – Social Security Number
    – Address
    – Credit card information
    – Drug and alcohol test results
    – Other clinical services test results
    – Personal information on company officers
- We are granted Power of Attorney rights to act on behalf of clients on specific transactions



J. J. Keller & Associates, Inc.®
**Since 1953**

# Fair Credit Reporting Act (FCRA)
# Compliance Information

The FCRA requires recipients of consumer reports or other consumer information to be educated on their responsibilities under the FCRA. Below is information on requirements and responsibilities for end-users of consumer information.

J. J. Keller provides access to FCRA required items for all Managed Services clients via our Client Information Center (CIC). The web address for CIC is www.jjkellerclientcenter.com.

## Client Legal Responsibilities

- As an end-user of Consumer Reports, you are required by law to follow the FCRA as well as the Driver Protection Policy Act (DPPA). As a Consumer Reporting Agency (CRA), we are required to inform you of your current legal responsibilities. While J. J. Keller provides regulatory guidance for its consumer information products, we do not act as legal counsel and cannot provide legal advice. J. J. Keller recommends you work with legal counsel to develop an employment screening program specific to your own needs that is in compliance with applicable state and federal laws.

- Upon signing your service agreement, you agreed to meet the requirements the FCRA and applicable State and Federal laws regarding consumer reports. A copy of this agreement is maintained by J. J. Keller. It is your responsibility to adhere to all FCRA requirements and take full responsibility for complying with all such laws and for using the information products you receive from J. J. Keller in a legally acceptable fashion.

- **Permissible Purpose:** Both the FCRA and DPPA have regulations on when an employer can obtain a consumer report. The permissible purposes most often used are as follows:

  **FCRA:** To a person which it has reason to believe intends to use the information for employment purposes.

  **DPPA:** For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under Chapter 313 of title 49.

- In addition to informing you about permissible purpose, it is our duty to inform you about your other legal responsibilities as a consumer reports end user. These include:

  - **Consumer Disclosure and Authorization:** It is your responsibility to inform your current or potential employee, in writing, the reason a consumer report may be obtained and to acquire the consumer's written authorization before obtaining such reports. This authorization indicates that you, and your driver/employee understand that all consumer reports are for the purpose of determining the consumer's eligibility for employment or continued employment, and that the written authorization and disclosure will be obtained before such reports are provided. J. J. Keller can provide a disclosure form for you to use, if desired.

  - **Adhering to Adverse Action Procedures:** Should you make any employment decisions based on the information found in a consumer report, you are required to follow the adverse action process as outlined in FCRA. Procedures for following this process and consequences of non-compliance should be outlined in your company policies for your protection.

  - **Legal Compliance:** You are responsible for following Federal, State, and local laws including, but not limited to the Fair Credit Reporting Act and the Driver Privacy Protection Act. J. J. Keller will aid you in complying with all applicable laws by having signed agreements with selected States and Canadian Provinces, by obtaining proper release forms. and by proactively monitoring applicable regulations.

  - **Confidentiality:** It is your responsibility to obtain, retain, use, and destroy all data in a confidential manner compliant with all Federal, State, and local laws.



J. J. Keller
& Associates, Inc.®
**Since 1953**

# FCRA Compliance Information

**Citations for FCRA sections in the U.S. Code, 15 U.S.C. § 1681 et seq.:**

| | |
|---|---|
| | 15 U.S.C. 1681 |
| Section 603 | 15 U.S.C. 1681a |
| Section 604 | 15 U.S.C. 1681b |
| Section 605 | 15 U.S.C. 1681c |
| Section 605A | 15 U.S.C. 1681c-1 |
| Section 605B | 15 U.S.C. 1681c-2 |
| Section 606 | 15 U.S.C. 1681d |
| Section 607 | 15 U.S.C. 1681e |
| Section 608 | 15 U.S.C. 1681f |
| Section 609 | 15 U.S.C. 1681g |
| Section 610 | 15 U.S.C. 1681h |
| Section 611 | 15 U.S.C. 1681i |
| Section 612 | 15 U.S.C. 1681j |
| Section 613 | 15 U.S.C. 1681k |
| Section 614 | 15 U.S.C. 1681l |
| Section 615 | 15 U.S.C. 1681m |
| Section 616 | 15 U.S.C. 1681n |
| Section 617 | 15 U.S.C. 1681o |
| Section 618 | 15 U.S.C. 1681p |
| Section 619 | 15 U.S.C. 1681q |
| Section 620 | 15 U.S.C. 1681r |
| Section 621 | 15 U.S.C. 1681s |
| Section 622 | 15 U.S.C. 1681s-1 |
| Section 623 | 15 U.S.C. 1681s-2 |
| Section 624 | 15 U.S.C. 1681t |
| Section 625 | 15 U.S.C. 1681u |
| Section 626 | 15 U.S.C. 1681v |
| Section 627 | 15 U.S.C. 1681w |
| Section 628 | 15 U.S.C. 1681x |
| Section 629 | 15 U.S.C. 1681y |

J. J. Keller & Associates, Inc.® Since 1953

SA085KG5-097 Copyright 2017 J. J. Keller & Associates, Inc.

# FCRA Compliance Information

### DISCLOSURE REGARDING BACKGROUND INVESTIGATION

**Employer** ("the Company") may obtain information about you from a third party consumer reporting agency for employment purposes. Thus, you may be the subject of a "consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living. These reports may contain information regarding your motor vehicle records ("driving records"), criminal history, social security verification, and/or education history.

You have the right, upon written request made within a reasonable time, to request whether a consumer report has been obtained about you and to request a copy of your report. The background investigations and driver file evaluations will be conducted by J. J. Keller & Associates, Inc., PO Box 368, Neenah, WI 54957-0368, (877) 564-2333, www.jjkeller.com. The scope of this disclosure is all-encompassing, however, allowing the Company to obtain from any outside organization all manner of consumer reports throughout the course of your employment to the extent permitted by law.

Signature: _____     Date: _____

This document should NOT be construed as legal advice, guidance, or counsel. Employers should consult their own attorney about their compliance responsibilities under the FCRA and applicable state law. J. J. Keller & Associates, Inc., expressly disclaims any warranties or responsibility or damages associated with or arising out of information provided. Employers seeking credit reports must provide additional notices pursuant to state law.

*Confidential*

SA085KG5-097 Copyright 2017 / J. Keller & Associates, Inc.



# FCRA Compliance Information

## Truth in Advertising

As a CRA, J. J. Keller is required to communicate the nature of the original source, limitations, variables affecting the information available and scope of information provided by each consumer reporting product offered.

J. J. Keller offers four types of consumer reporting products to its clients; motor vehicle reports; safety performance history records requests; pre-employment screenings ; and California Employer Pull Notice reports. We use four sources to obtain the information.

For motor vehicle reports, our researcher, Samba, goes directly to federal, State, and or/local agencies where the motor vehicle records are currently maintained. It is important to know that Samba relies totally on the information contained in these records, but will not report information beyond seven years.

For Safety Performance History Records Requests, our researcher, Sterling, will perform the employment and safety performance verifications based on the information provided and authorized by the consumer on the form.

For Pre-Employment Screenings obtained through FMCSA, our researcher, NIC Federal, provides the national crash data, which is transferred to a scorecard for your review.

For California Employer Pull Notice Requests, J. J. Keller has access to download all pull notices for its clients on a daily basis.

Here are the product descriptions for each, which can be found on the ordering screen in CIC or the agreement:

### Motor Vehicle Report:
J. J. Keller and its authorized agents will complete a search of a driving history record in the state of issuance. Records include driving history over the past 3 - 7 years and are available in all 50 states, Washington DC, and most Canadian Provinces. Reports can include driving offenses and citations.

### Pre-Employment Screening Program:
J. J. Keller will procure PSP Reports from NIC Federal and prepare a Pre-Employment Screening Scorecard for each applicant using the PSP Report data. The scoring system will be based entirely on the FMCSA's Safety Measurement System, which establishes a severity weight for each roadside inspection violation and crash type and includes a time weight multiplier.

### California Employer Pull Notice Program (CA PULL):
J. J. Keller will manage the driver enrollment process for all required drivers; obtain the pull notice reports from California; audit them and make them available for viewing within CIC.



# FCRA Compliance Information

## ACKNOWLEDGMENT AND AUTHORIZATION FOR BACKGROUND INVESTIGATION

I acknowledge receipt of the separate document entitled DISCLOSURE REGARDING BACKGROUND INVESTIGATION, DISCLOSURE REGARDING INVESTIGATIVE BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and additional state/city-specific notices and Summary of Rights and certify that I have read and understand those documents. I hereby authorize the evaluation of my driver file by J. J. Keller & Associates, Inc. for compliance with state and federal laws and the acquisition of "consumer reports" (i.e., driving records, criminal history, social security verification, and/or education history) and/or "investigative consumer reports" (i.e., employment and/or education verification) by **the Company** (as listed below) at any time after receipt of this authorization and throughout my employment, if applicable. In addition, I hereby authorize any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, current and past employer, or insurance company to furnish any and all background information requested by J. J. Keller & Associates, Inc., PO Box 368, Neenah, WI 54957-0368, (877)-564-2333, www.jjkeller.com, and/or Employer itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

New York applicants only: Upon request, you will be informed whether or not a consumer report was requested by the Company, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report. You have the right to inspect and receive a copy of any investigative consumer report requested by the Company by contacting the consumer reporting agency identified above directly or by checking this box. ☐ By signing below, you acknowledge receipt of Article 23-A of the New York Correction Law.

New York City applicants only: By signing this form, you further authorize the Company to provide you with a copy of your consumer report, the New York City Fair Chance Act Notice form, and any other documents, to the extent required by law, at the mailing address and/or email address you provide to the Company.

Washington State applicants only: You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

Minnesota and Oklahoma applicants only: Please check this box if you would like to receive a copy of a consumer report if one is obtained by the Company. ☐

California applicants only: Please check this box if you would like to receive a copy of an investigative consumer report at no charge if one is obtained by the Company whenever you have a right to receive such a copy under California law as stated in the Notice Regarding Background Checks per California Law you received. ☐

Note to Residents of New Hampshire, Pennsylvania, Washington, Puerto Rico, and Canadian Provinces — British Columbia, Manitoba, New Brunswick, Newfoundland & Labrador, Northwest Territories, Nunavut, Prince Edward Islands, Quebec, Saskatchewan, and Yukon: State specific or Canadian general motor vehicle release forms must be completed and signed prior to obtaining the reports.

Signature* _____   Date* _____
(MM/DD/YY)

Company Name* _____   ("Company")

### BACKGROUND INFORMATION

Last Name* _____   First* _____   Middle* _____

Social Security # _____   Date of Birth* _____

*Required Information

This document should NOT be construed as legal advice, guidance or counsel. Employers should consult their own attorney about their compliance responsibilities under the FCRA and applicable state law. J. J. Keller & Associates, Inc., expressly disclaims any warranties or responsibility or damages associated with or arising out of information provided. Employers seeking credit reports must provide additional notices pursuant to state law.

*Confidential*


J. J. Keller
& Associates, Inc.®
**Since 1953**

SA085KGS-097 Copyright 2017 J. J. Keller & Associates, Inc.

# FCRA Compliance Information

## DOT Basic Verification:

J. J. Keller and/or Sterling uses the information provided by the applicant in section 1 of the Safety Performance History Records Request (SPHRR) form and/or their application for employment to contact his/her previous employer.

The attempt contact method (phone, fax, email, mail) is determined by the information on the SPHRR form and/or application for employment. A minimum of two (2) attempts are made to contact the previous employer and request the applicant's safety performance history information.

Each attempt is documented to include driver name, previous employer name and address, date and time of attempt, method of attempt, name and title of person being contacted, responses to the safety performance history questions, and the name of the consumer reporting agency's employee who made the attempt.

The previous employer(s) will be asked the following questions:

1.  If the driver has been involved in any DOT reportable accidents and if yes, to provide the following information:
    a.  Date of accident
    b.  Location of accident
    c.  No. of injuries
    d.  No. of fatalities
    e.  If there was a hazardous materials spill
2.  Whether the applicant was subject to DOT testing requirements under 49 CFR part 40 while employed by them and if yes, the following information must be provided:
    a.  Dates the applicant was subject to DOT testing requirements
    b.  Within the past 3 years from the application date, has this person violated any of the drug and/or alcohol prohibitions under 49 CFR Part 40 or Subpart B of Part 382, including:
        i.   An alcohol test with a result of 0.04 or higher alcohol concentration
        ii.  A controlled substances test result of positive, adulterated, or substituted.
        iii. A refusal to submit to a random, post-accident, reasonable suspicion, or follow-up controlled substances or alcohol test.
        iv.  Alcohol use while performing or within 4 hours before performing safety-sensitive functions
        v.   Alcohol use after an accident, in violation of 382.303.
        vi.  Controlled substance use while on duty, except as allowed under 382.213.
3.  If this person violated a DOT drug and/or alcohol prohibition, did he/she fail to begin or complete a rehabilitation program prescribed by a Substance Abuse Professional (SAP)?
4.  If this person successfully completed a SAP's rehabilitation referral and remained in your employ, did he/she subsequently have an alcohol test result of 0.04 or greater, a verified positive drug test, or refusal to be tested?

The fees charged for DOT Basic Verification are found in your agreement.



# FCRA Compliance Information

## Adverse Action

Given that there are legal requirements imposed by the FCRA and, in some instances, state consumer reporting laws, regarding taking adverse action against a consumer based on a consumer report, J. J. Keller recommends that you consult with counsel to develop a legally compliant adverse action policy.

Before you reject a job applicant, reassign or terminate an employee, deny a promotion, or take any other adverse employment action based on information in a consumer report, you must give the applicant or employee:

- A notice that includes the copy of the consumer report you relied on to make your decision; and

- A copy of A Summary of Rights Under the Fair Credit Reporting Act.

Giving the person the notice in advance gives the person the opportunity to review the report and tell you if it is correct.

### After You Take an Adverse Action:
If you take an adverse action based on information in a consumer report, you must give the applicant or employee a notice of that fact - orally, in writing, or electronically.

An adverse action notice tells people about their rights to see information being reported about them and to correct inaccurate information. The notice must include:

- The name, address, and phone number of the consumer reporting company that supplied the report;

- A statement that the company that supplied the report did not make the decision to take the unfavorable action and can't give specific reasons for it; and

- A notice of the person's right to dispute the accuracy or completeness of any information the consumer reporting agency furnished, and to get an additional free report from the company if the person asks for it within 60 days.

### California Adverse Action Information
"Under all applicable circumstances, comply with California Civil Code Sections 1785.20 and 1786.40 if the taking of adverse action is a consideration, which shall include, but may not be limited to, advising the consumer against whom an adverse action has been taken that the adverse action was based in whole or in part upon information contained in the Information Product, informing the consumer in writing of End User's name, address, and telephone number, and provide the consumer of a written notice of his/her rights under the ICRA and the CCRAA."

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies.
See www.consumerfinance.gov/learnmore for additional information.



# FCRA Compliance Information

J. J. Keller provides a Pre Adverse Action Notification form and an Adverse Action Notification form for your use as v the federal "Summary of Rights" notice. All forms can be found on CIC. Sample forms are below for your reference

## PRE-ADVERSE ACTION NOTIFICATION

you authorized _____ (the Company) to obtain mer reports and/or investigative consumer reports about you from a consumer reporting agency. The any is considering taking action in whole or in part based on information in such report(s). Enclosed I find (1) a copy of the report we obtained from J.J. Keller & Associates, Inc. [Attention: tions Team Leader, Mail Stop 1520, P. O. Box 368, Neenah, WI 54957-0368], (2) A Summary of tights Under the Fair Credit Reporting Act, and if applicable, (3) Article 23-A of the New York, tion Law, (4) A Summary of Your Rights Under New Jersey Law (5) A Summary of Your Under Washington Law, and (6) a copy of the Company's Background Check Policy and ation Concerning the Process for Correcting a Criminal Record in Massachusetts.

wsh to dispute the accuracy of the information in the report directly with the consumer reporting i.e., the source of the information contained in the report), you should contact the agency identified directly.

evaluate the information in your report on an individualized case-by-case basis in accordance with and EEOC guidance. If you believe that there is additional information that may help us better e your fitness for this position, please contact us immediately by calling _____. If we do I from you within 5 days, we will make our hiring determination based on the information currently e to us.

es     ☒ A Summary of Your Rights Under the FCRA
       ☒ Consumer Report
       Article 23-A of the New York Correction Law
       A Summary of Your Rights Under New Jersey Law
       A Summary of Your Rights Under Washington Law
       Background Policy in Massachusetts
       DCJIS information sheet in Massachusetts

## ADVERSE ACTION NOTIFICATION

Dear _____

We regret to inform you that                              [   (1) is unable to off employment], or    (2) will terminate your employment effective _____, or decided not to offer you a promotion)] *

The decision was based in whole or in part on information contained in a report from J.J. Kelle Associates, Inc. [Attention: Operations Team Leader, Mail Stop 1520, P. O. Box 368, Neen 54957-0368]: a copy of which was previously given to you. The agency did not make this em decision and is unable to supply you with specific reasons why the decision was made. Under of the Fair Credit Reporting Act, you have the right to obtain a free copy of the report if you sub request to the agency identified above no later than 60 days after you receive this notice. Und 611 of that Act, and state law you also have the right to dispute the accuracy or completeness information in the report by contacting the consumer reporting agency above.

**Massachusetts applicants or employees only (this section applies only if the report refs above is a credit report)**: You have the right to obtain a free copy of your credit report withir from the consumer credit reporting agency which has been identified on this notice. The cons reporting agency must provide someone to help you interpret the information on your credit rep calendar year you are entitled to receive, upon request, one free consumer report. You have t dispute inaccurate information by contacting the consumer credit reporting agency directly. If notified a consumer credit reporting agency in writing that you dispute the accuracy of informat file, the agency must then, within thirty business days, reinvestigate and modify or remove inac information. The consumer credit reporting agency may not charge a fee for this service. If re does not resolve the dispute to your satisfaction, you may send a letter to the consumer credit agency to be kept in your file, explaining why you think the record is inaccurate. The consume reporting agency must include your statement about the disputed information in a report it issue you.

**California applicants or employees only (this section applies only if the report references credit report)**: You have the right to obtain a free copy of your credit report within 60 days from consumer credit reporting agency which has been identified on this notice and from any other cr credit reporting agency which compiles and maintains files on consumers on a nationwide basis California law, you also have the right to dispute with the consumer reporting agency the accura completeness of any information in the report.

Sincerely,

* Identify any adverse action taken on the basis of the consumer report



J. J. Keller & Associates, Inc.®
**Since 1953**

# FCRA Compliance Information

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W. Washington, DC 20552*

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may receive a credit score for free if you purchase one from credit bureaus or from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates | a. Consumer Financial Protection Bureau<br>1700 G Street, N.W.,<br>Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list. | b. Federal Trade Commission: Consumer Response Center – FCRA |

| | |
|---|---|
| 2. To the extent not included in item 1 above: | Washington, DC 20580<br>(877) 382-4357 |
| a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to the Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors Subject to the Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, S.W., 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street, N.E. |

| | |
|---|---|
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Washington, DC 20549<br>Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center<br>FCRA<br>Washington, DC 20580<br>(877) 382-4357 |



# FCRA Compliance Information

## Understanding Consumer Reports

J. J. Keller is required to provide guidance to you on how to order, retrieve, read and understand the information provided in consumer reports provided by the CRA.

You can use the CIC website to order motor vehicle reports (MVR), DOT Employment Verification (SPHRR) and Pre-employment Screening Program (PSP) Scorecards. California Employer Pull Notices are generated automatically by the California DMV office.

Following are step-by-step MVR report ordering instructions below.

1.) CIC select Services on the top of the page, and then Driver Qualification.



2.) On the next page select Background Screening Request.





# FCRA Compliance Information

**3.)**  Select "Create Order" on the following page.



**4.)**  Select your background screenings and click "Search for applicant information".



**4.)**  If the applicant or driver is in our system, search for them by name and click the "select applicant" button.





**J. J. Keller**
**& Associates, Inc.®**
**Since 1953**

# FCRA Compliance Information

6.) If the applicant or driver is not found in our system, click "applicant not found".



7.) Complete all required fields to identify your applicant.



8.) Verify and update your contact information (if necessary) and certify your order and compliance with FCRA requirements.



J. J. Keller
& Associates, Inc.®
Since 1953

# FCRA Compliance Information

**9.)** Upload your release and required documentation and select "Review Order".



**10.)** Verify the information on the screen and select "Submit".



**11.)** A message displays indicating the order has been placed successfully. Click "Continue".





# FCRA Compliance Information

• **Sample MVR:** The following is a sample Motor Vehicle Report as provided by J. J. Keller's vendor, Samba. This sample has been designed to help you understand MVRs.



• Expired/missing or renewed MVRs will automatically be ordered by J. J. Keller. To request a pre-employment or other MVR from J. J. Keller & Associates, either contact your Client Service Specialist or log in to CIC and fill out the online request form.



# FCRA Compliance Information

## Sample Safety Performance History Records Request

CIC can also be used to place an order for a DOT Basic Verification (which includes completion of the Safety Performance History Records Request form). The following is a J. J. Keller Safety Performance History Records Request, in which Sterling will call the current/previous employer to identify the contact and method of transmission that must be used to get the form to the contact.

### SIDE 1 — SAFETY PERFORMANCE HISTORY RECORDS REQUEST

RECIPIENT EMPLOYER: The individual identified in SECTION 1 below has indicated that you employ(ed) or use(d) him/her within the last 3 years in a position that involved the operation of a commercial motor vehicle and/or that was subject to U.S. Department of Transportation (DOT)-regulated drug and alcohol testing.

In accordance with 49 CFR §§40.25 and 391.23, we are hereby requesting that you supply us with the Safety Performance History of this individual. Under DOT rule §391.23(g), you must respond to this inquiry within 30 days of receipt.

Please complete SECTIONS 2 through 4 (as applicable) and return to the prospective employer shown in SECTION 1.

APPLICANT: Complete SECTION 1 and submit to prospective employer.

PROSPECTIVE EMPLOYER: Complete SECTION 5a and send form to current/previous employer. Upon receipt of completed form, complete SECTION 5b and retain.

#### SECTION 1: TO BE COMPLETED BY PROSPECTIVE EMPLOYEE

I, (Print Name): Driver's Name — First, M.I., Last — hereby authorize:
Driver's Social Security #, Social Security Number, Driver's DOB, Date of Birth

Previous Employer: Previous Employer's Name, Email — Previous Employer's Email
Street: Previous Employer's Address, Telephone — Previous Employer's Phone
City, State, Zip: Previous Employer's City/State/Zip, Fax No. — Previous Employer's Fax

to release and forward the information requested by section 4 of this document concerning my Alcohol and Controlled Substances Testing records within the previous 3 years from Date of Employment Application (date of employment application)

To:
Prospective Employer: Prospective Employer's Name
Attention: Prospective Employer's Contact, Telephone: Prospective Employer's Phone
Street: Prospective Employer's Address
City, State, Zip: Prospective Employer City/State/Zip

In compliance with §40.25(g) and 391.23(h), release of this information must be made in a written form that ensures confidentiality, such as fax, email, or letter.
Prospective employer's confidential fax number: Prospective Employer's Fax (CONFIDENTIAL)
Prospective employer's confidential email address: Prospective Employer's Email (CONFIDENTIAL)

Driver's Signature — Applicant's Signature — Date Signed — Date

#### SECTION 2: TO BE COMPLETED BY PREVIOUS EMPLOYER
##### EMPLOYMENT VERIFICATION

The applicant named above was or is employed or used by us. Yes ☐ No ☐ Verify Driver was once employed
Employed as (job title) Job Title Held by Driver from (m/y) Date Driver Started to (m/y) Date Driver Left Employment

Did he/she drive a motor vehicle for you? Yes ☐ No ☐ If yes, what type? Straight Truck ☐ Tractor-Semitrailer ☐ Bus ☐ Cargo Tank ☐ Doubles/Triples ☐ Other (Specify) Indicate if Driver drove a CMV for you and if so, which type

Completed by: Contact who completed request
Company: Company who completed request
Street: Address with City/State/Zip of Company who completed request
City, State, Zip: completed request — Telephone: Phone of company completing request
Signature: Signature of contact who completed request — Date: Date Signed

If there is no safety performance history to report, check here ☐ and return. Otherwise, complete Sections 3 and 4 on SIDE 2 before returning.

© Copyright 2008 J J KELLER & ASSOCIATES, INC.

SA0B5KG5-097 Copyright 2017 J. J. Keller & Associates, Inc.

J. J. Keller & Associates, Inc.
Since 1953

# FCRA Compliance Information

| SIDE 2 | Employee Name: Driver's Name | Date: Date |
|---|---|---|

**SECTION 3:** **TO BE COMPLETED BY PREVIOUS EMPLOYER**

**ACCIDENT HISTORY**

Complete the following for any accidents included on your accident register (§390.15(b)) that involved the applicant in the 3 years prior to the application date shown on SIDE 1 or check here ☐ if there is no accident register data for this driver.

> Check if there is no accident information on this driver in the previous 3 years

| | Date | Location | No. of Injuries | No. of Fatalities | Hazmat Spill |
|---|---|---|---|---|---|
| | Date of Accident | Location of Accident | Injuries | Fatalities | If there was |
| 1. | | | | | a HM spill |
| 2. | | | | | |
| 3. | | | | | |

Please provide information concerning any other commercial motor vehicle accidents involving the applicant that were reported to government agencies or insurers or retained under internal company policies:

Indicate other accidents

**SECTION 4:** **TO BE COMPLETED BY PREVIOUS EMPLOYER**

**DRUG AND ALCOHOL HISTORY**

If applicant was not subject to DOT testing requirements under 49 CFR Part 40 while employed by you, please check here ☐ and return.

Applicant was subject to DOT testing requirements from _____ to _____

In answering these questions, include any required DOT drug or alcohol testing information you obtained from other employers in the 3 years prior to the application date shown on SIDE 1.

> Check if driver wasn't subject to DOT D&A Testing requirements
>
> If driver was subject to DOT D&A Testing requirements, indicate timeframe

| | YES | NO |
|---|---|---|
| Within the past 3 years from the application date shown on SIDE 1 | | |
| 1. Has this person violated any of the drug and/or alcohol prohibitions under 49 CFR Part 40 or Subpart B of Part 382, including: | ☐ | ☐ |
| • An alcohol test with a result of 0.04 or higher alcohol concentration. | | |
| • A controlled substances test result of positive, adulterated, or substituted. | | |
| • A refusal to submit to a random, post-accident, reasonable-suspicion, or follow-up controlled substances or alcohol test. | | |
| • Alcohol use while performing or within 4 hours before performing safety-sensitive functions. | | |
| • Alcohol use after an accident, in violation of §382.303. | | N/A |
| • Controlled substances use while on duty, except as allowed under §382.213. | | |

2. If this person violated a DOT drug and/or alcohol prohibition, did he/she fail to begin or complete a rehabilitation program prescribed by a Substance Abuse Professional (SAP)? If rehabilitation was required but you do not know if he/she began or completed such a program, check here ☐.   ☐ ☐ ☐

> Indicate any testing violations, positives, refusals etc.

3. If this person successfully completed a SAP's rehabilitation referral and remained in your employ, did he/she subsequently have an alcohol test result of 0.04 or greater, a verified positive drug test, or refuse to be tested?   ☐ ☐ ☐

**SECTION 5a:** **TO BE COMPLETED BY PROSPECTIVE EMPLOYER**

This form was (check one): ☐ Faxed to previous employer ☐ Mailed ☐ Emailed ☐ Other _____

By Indicate who sent the form to the previous employer                    Date Date sent

> Indicate how the form was sent to previous employer

Subsequent attempts to contact previous employer (§391.23(c)(1))

Indicate other attempts to contact the previous employer

**SECTION 5b:** **TO BE COMPLETED BY PROSPECTIVE EMPLOYER**

Complete below when information is obtained.

Information received from: If information was returned, indicate by whom

Received by: Person who received information    Method: ☐ Fax ☐ Mail ☐ Email ☐ Telephone

Date: Date information was returned    ☐ Other

> Method information was returned

© Copyright 2017 J. J. KELLER & ASSOCIATES, INC.

J. J. Keller & Associates, Inc.® Since 1953

# FCRA Compliance Information

J. J. Keller provides a Pre Adverse Action Notification form and an Adverse Action Notification form for your use as well as the federal "Summary of Rights" notice. All forms can be found on CIC. Sample forms are below for your reference:

---

**PRE-ADVERSE ACTION NOTIFICATION**

Dear _____

On _____ you authorized _____ ('the Company') to obtain consumer reports and/or investigative consumer reports about you from a consumer reporting agency. The Company is considering taking action in whole or in part based on information in such reports. Enclosed please find (1) a copy of the report we obtained from J.J. Keller & Associates, Inc. [Attention: Operations Team Leader, Mail Stop 1520, P. O. Box 368, Neenah, WI 54957-0368] (2) A Summary of Your Rights Under the Fair Credit Reporting Act and if applicable, (3) Article 23-A of the New York Correction Law (4) A Summary of Your Rights Under New Jersey Law (5) A Summary of Your Rights Under Washington Law, and (6) a copy of the Company's Background Check Policy and Information Concerning the Process for Correcting a Criminal Record in Massachusetts.

If you wish to dispute the accuracy of the information in the report directly with the consumer reporting agency (i.e., the source of the information contained in the report), you should contact the agency identified above directly.

We will evaluate the information in your report on an individualized case-by-case basis in accordance with the law and EEOC guidance. If you believe that there is additional information that may help us better evaluate your fitness for this position, please contact us immediately by calling _____. If we do not hear from you within 5 days, we will make our hiring determination based on the information currently available to us.

Sincerely:


Enclosures   ☒ A Summary of Your Rights Under the FCRA
             ☒ Consumer Report
                Article 23-A of the New York Correction Law
                A Summary of Your Rights Under New Jersey Law
                A Summary of Your Rights Under Washington Law
                Background Policy in Massachusetts
                DCJIS information sheet in Massachusetts

---

**ADVERSE ACTION NOTIFICATION**

Dear _____

We regret to inform you that                  [   ] (1) is unable to offer you employment, or   (2) will terminate your employment effective _____, or   (3) has decided not to offer you a promotion(s)*

This decision was based in whole or in part on information contained in a report from J.J. Keller & Associates, Inc. [Attention: Operations Team Leader, Mail Stop 1520, P. O. Box 368, Neenah, WI 54957-0368] a copy of which was previously given to you. The agency did not make this employment decision and is unable to supply you with specific reasons why the decision was made. Under Section 612 of the Fair Credit Reporting Act, you have the right to obtain a free copy of the report if you submit a written request to the agency identified above no later than 60 days after you receive this notice. Under Section 611 of that Act, and state law you also have the right to dispute the accuracy or completeness of any information in the report by contacting the consumer reporting agency above.

**Massachusetts applicants or employees only (this section applies only if the report referenced above is a credit report):** You have the right to obtain a free copy of your credit report within sixty days from the consumer credit reporting agency which has been identified on this notice. The consumer credit reporting agency must provide someone to help you interpret the information on your credit report. Each calendar year you are entitled to receive, upon request, one free consumer report. You have the right to dispute inaccurate information by contacting the consumer credit reporting agency directly. If you have notified a consumer credit reporting agency in writing that you dispute the accuracy of information in your file, the agency must then within thirty business days reinvestigate and modify or remove inaccurate information. The consumer credit reporting agency may not charge a fee for this service. If reinvestigation does not resolve the dispute to your satisfaction, you may send a letter to the consumer credit reporting agency, to be kept in your file, explaining why you think the record is inaccurate. The consumer credit reporting agency must include your statement about the disputed information in a report it issues about you.

**California applicants or employees only (this section applies only if the report referenced above is a credit report):** You have the right to obtain a free copy of your credit report within 60 days from the consumer credit reporting agency which has been identified on this notice and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. Under California law, you also have the right to dispute with the consumer reporting agency the accuracy or completeness of any information in the report.

Sincerely,

*Identify any adverse action taken on the basis of the consumer report.

---



J. J. Keller & Associates, Inc.® Since 1953

# FCRA Compliance Information

## Client Required Documents

- J. J. Keller works to ensure that you understand the specific reports required to be obtained under Federal Motor Carrier Safety Administration (FMCSA) regulations. However, some documents such as the motor vehicle report (MVR), Safety Performance History Records (SPHRR), and Pre-Employment Screening Program (PSP) report and scorecard as well as the California Employer Pull Notice (CA PULL) are consumer reports. As a consumer reporting agency and provider of these reports, J. J. Keller has the responsibility to educate you on your legal responsibilities, which are assumed when obtaining one of these reports.

- If you have selected to receive motor vehicle reports from J. J. Keller, you must know that, a signed release is needed to obtain a motor vehicle report on a driver.  Prior to giving the driver a motor vehicle report release (both general and state-specific if applicable) for signature, you must provide the "Disclosure Regarding Background Investigation" or equivalent and Summary of Rights, and acquire the driver's signature on the disclosure document. The release (general or state-specific), disclosure and summary forms can be found in CIC.

- MVRs and/or Driving Records are only ordered in strict compliance with the Driver Privacy Protection Act (DPPA) and any related state laws requiring written consent of the driver/employee. Any consumer reports received must only be used in the normal course of business to obtain lawful information relating to the holder of a commercial driver's license or to verify information provided by an applicant or employee.

- There are multiple jurisdictions that require a separate Motor Vehicle Record Request form be completed before they will release the driver/employee driving record to J. J. Keller. To ensure our clients are using the correct Motor Vehicle Record Request Form, J. J. Keller secured agreements with the States of AK, CO, GA, CA, MD, MI, NH, OH, PA, WA; Canadian Provinces including Newfoundland, Northwest Territories, and Saskatchewan; and Puerto Rico to obtain abstracts of driver records for verification of information and gained access to the State-specific release forms.

- If you have selected to receive DOT-required employment and safety performance verifications, a signed general release and Safety Performance History Records Request is needed to obtain this information on a consumer. Prior to giving the consumer the SPHRR, you must provide the "Disclosure Regarding Investigative Background Investigation" or equivalent and Summary of Rights, and acquire the driver's signature on the disclosure document. The general release, SPHRR form, disclosure and summary forms can be found in CIC.

- If you have selected to receive the Pre-Employment Screening Program (PSP) service, a general release, PSP Data Retrieval Request and PSP Disclosure and Authorization Form are needed to obtain national crash data from FMCSA. Prior to giving the driver the general release, data retrieval request and disclosure and authorization form, you must provide the "Disclosure Regarding Background Investigation" or equivalent and Summary of Rights, and acquire the drivers signature on the disclosure documents.  The general release, PSP Data Retrieval Request, PSP Disclosure and Authorization, disclosure and summary forms can be found in CIC.

- If you have selected to receive the California Employer Pull Notice (CA PULL) service, a signed general release is needed to obtain a CA PULL notice for a driver. Prior to giving the general release to the driver for signature, you must provide the "Disclosure Regarding Background Investigation" or equivalent and the federal Summary of Rights notice and acquire the driver's signature on the disclosure document. The general release, disclosure and summary forms can be found in CIC.

- All necessary forms are available for your use on J. J. Keller's CIC. Following are examples of the general release, disclosure, PSP Data Retrieval Request and PSP Disclosure and Authorization Form.

SA085KG5-097 Copyright 2017 J. J. Keller & Associates, Inc.



# FCRA Compliance Information

## Sample Pre-Employment Screening Program Scorecard

CIC can be used to place an order for a PSP scorecard. The following is a copy of the Scorecard that J. J. Keller assembles based on FMCSA's Safety Measurement System, which establishes a severity weight for each roadside inspection violation and crash type and includes a time weight multiplier.



# FCRA Compliance Information

## California Employer Pull Notice (CA PULL):

Following is a copy of a CA PULL notice automatically generated and sent to J. J. Keller by California when any of the following actions/activities occur:

- Upon enrollment of driver in the EPN program
- Annually from the date of enrollment
- When a driver has any of the following actions/activities added to his/her driving record:
- Convictions
- Failures to Appear
- Accidents
- Driver License Suspensions or Revocations
- Any other actions taken against the driving privilege



In addition to the information above, J. J. Keller can also provide webinar training or instructional videos to help you understand and retrieve consumer reports.



# FCRA Compliance Information

## Information Protection

Under FCRA and DPPA regulations, it is your responsibility as well as the responsibility of J. J. Keller to limit the dissemination of consumer information to only those with legitimate need, permissible purpose, and authorized by consumer. Further, it is your responsibility as well as the responsibility of J. J. Keller to protect the privacy of consumer data and to destroy that data in a secure manner when no longer needed and when applicable regulation(s) permit destruction.

Retention of consumer data by J. J. Keller shall be done in a confidential manner. As an End-User of consumer reports, it is unlawful for you to disclose any consumer data for any use not permitted under section 2721 (b) of the DPPA or 15 U.S.C. 1681 (b) of FCRA. DPPA requires that you protect consumer information which is contained in motor vehicle records, and that you only access DMV records with the written consent of the driver/employee.

All consumer data is to be destroyed when no longer needed. Hard Copy consumer reports are to be shredded and/or destroyed. Electronic consumer reports are to be erased, overwritten, or scrambled.

J. J. Keller will use the same degree of care to prevent disclosure of the confidential materials to any other person as it uses to protect its own information of like kind, but in no event less than reasonable care. Thus, it is J. J. Keller's practice to:

- Take responsible procedures to protect its account number and password information so that only key personnel employed by our company know this sensitive information;
- Agrees that system access software, whether developed by your company or purchased from a third-party vendor, will have End-User's account number and password "hidden" or embedded and be known only by supervisory personnel;
- Not discuss its account number or password information by telephone with any unknown caller;
- Restrict the ability to obtain consumer information to a few key personnel;
- Place all terminal devices used to obtain consumer information in a secure location within its facility so that unauthorized persons cannot easily access them;
- Turn off and lock all devices or systems used to obtain consumer information;
- Secure hard copies and electronic files of consumer reports within its facility so that unauthorized persons cannot easily access them;
- Shred and/or destroy all hard copy consumer reports when they are no longer needed and erase and overwrite or scramble electronic files containing consumer information when no longer needed and when applicable regulation(s) permit destruction; and
- Notify its employees that End-User can access consumer information only for the permissible purposes listed in the Fair Credit Reporting Act.

As the end-user of this consumer data, and by signing the service agreement, you have agreed to follow similar procedures when retaining and/or destroying such information.



# FCRA Compliance Information

## Information Security

J. J. Keller requires the secure transmission of any personally identifiable information (PII) sent to or received from J. J. Keller. This includes the directive that when sensitive PII such as a driver's license number, state ID number, social security number, passport number, credit card number, medical information, consumer information (e.g., criminal background check, motor vehicle record, driver qualification, etc.) is in a document being sent to J. J. Keller that the following be adhered to:

- All transmissions should be directed to a named party;
- All transmissions must be clearly marked as "CONFIDENTIAL" and include a request to notify sender if received by someone other than named party;
- If faxed, a cover page should always be used and must not contain any personally identifiable information;
- If faxed, CRA shall have verified receiving fax is in a non-public location;
- If transmitted using a network other than J. J. Keller's that, such network should be secured using a minimum of 128 SSL;
- If transmitted via Internet, data shall be encrypted or protected in a comparable manner.

## Prescribed Notices

J. J. Keller provides FCRA-required and FTC-prescribed documents to its clients as attachments in the service agreements, and in CIC from the Driver Qualification Services page (look for the "Prescribed Notices" link). Per FCRA mandates, you are required to provide the Summary of Rights to the consumer in the following instances:

- When providing the "Disclosure Regarding Background Investigation" form or similar form explaining that a consumer report may be obtained for employment purposes.
- Before taking any adverse action based in whole or in part on any information in the consumer report you received from J. J. Keller.
- When the consumer requests a copy of the consumer report. The consumer report and Summary must be provided within three business days of receiving the consumer's request.

J. J. Keller does not provide a copy of the Summary of Rights with every consumer reporting product uploaded into the web portal, but rather provides access to the Summary of Rights in this area of the site for easy printing.

If you have any questions about FCRA regulations and requirements for users of consumer reports, please contact your J. J. Keller client service specialist.



SA085KG5-097 Copyright 2017 J. J. Keller & Associates, Inc.